GEORGE SEVEDGE v. KANSAS CITY, ST. LOUIS & CHICAGO RAILROAD COMPANY and CHICAGO & ALTON RAILROAD COMPANY, Appellants. —53 S. W. (2d) 284.

Court en Banc, October 5, 1932.

*Charles M. Miller* for appellants.

314

*Atwood, Wickersham, Hill & Chilcott* for respondent.

ATWOOD, C. J.—This case fell to the writer on reassignment after having been argued and submitted once in division and twice in banc. It is an action for personal injuries alleged to have been sustained by respondent, George L. Sevedge, in a collision with a passenger train ·operated by the Chicago & Alton Railroad Company, as lessee, over the tracks of the Kansas City, St. Louis & Chicago Railroad Company. The trial resulted in a judgment in favor of plaintiff for $12,500, from which defendants have appealed.

It appears from the evidence that plaintiff and one John Lewis were driving north in an automobile on Arlington Avenue which crossed defendants' railroad track in a rather thickly populated

community about half way between Independence, Missouri, and Kansas City, Missouri. The highway ran north and south and the railroad extended in a southeasterly and northwesterly direction. East of this crossing and at a distance variously estimated from 200 to 1000 feet the railroad track curved to the south. West of the crossing it curved to the north. A street car track crossed under the railroad track about seventy-five feet southeast of the Arlington Avenue railroad crossing, and then crossed Arlington Avenue about 100 feet south of the Arlington Avenue railroad crossing. Plaintiff and his companion drove from the northwest into Arlington Avenue about seventy-five feet south of the railroad crossing and started north toward the crossing. The railroad track was on a high grade at that point and the highway approach from the south was steep. Plaintiff and his companion testified that the morning was foggy and they could see only a short distance on the railroad track. They said they stopped when they got about fifteen feet from the track and looked both ways but could see no train; that they then started over the railroad crossing and were struck by a train coming from the southeast. Plaintiff's companion who was driving the car thus described what happened:

"Q. Tell what happened on the crossing there where you were hit? A. As I drove up on the crossing I noticed the plank was loose. I drove very slow, had my car in low, and I got my right front wheel over the north rail, and something grabbed my steering wheel, and took me down the track there, and when I got my car stopped, I was about two feet or three feet off the plank, at the side of the crossing.

"Q. You started down the track which direction? A. To the west. And then I threw my car in neutral and looked, and I saw there was a board right out on the south side of the north rail and my wheel was right in between there. I reversed my car, backed up, and started to go ahead and had my car, the front wheel, just across the north track when the train came along and took me down, and that is the last, gentlemen, I can tell you until they had me in the hospital."

This witness further testified that his automobile was moving about three or four miles an hour as he approached the crossing and he could have stopped within two or three feet; that it was fifteen or twenty seconds from the time they got on the track until the train struck them. Plaintiff testified to substantially the same facts. He said that he observed the obstruction in the crossing; that the boards made a rattling sound; and the front wheels of the automobile commenced shaking and turned to the left on the track. Another witness testified that the boards at the crossing were loose and shaky and one board was missing. An automatic signal bell at the crossing was designed to start ringing when a westbound train was within 2100

feet and continue ringing until the train had passed over the crossing. The testimony was conflicting as to whether this bell was ringing prior to the collision and whether any signal was sounded by the approaching train.

Plaintiff's specifications of defendants' negligence were failure to give statutory signals; failure to construct and maintain crossing as required by law; permitting automatic bell to become and remain out of order so that it would not ring or warn; running said train at a high, unlawful, careless, negligent and dangerous rate of speed; and failure to slacken, stop or warn plaintiff under the humanitarian rule.

Defendants went to trial on separate answers each consisting of a general denial, plea of contributory negligence and plea to the jurisdiction.

Appellants assign error in the giving of instruction number 3, requested by plaintiff. This instruction is as follows:

"The court instructs the jury that if the jury find and believe from the evidence that on or about the 2nd day of June, 1921, plaintiff was riding in the automobile referred to in evidence upon Arlington Avenue in Jackson County, Missouri, where said Arlington Avenue intersects and crosses over the right of way, roadbed and railroad tracks of defendants at what is known as the Arlington Avenue crossing in Jackson County, Missouri, and that the same was a public and much used highway and that at said time and place defendant Chicago & Alton Railroad Company was operating a locomotive and train of cars upon said right of way, roadbed and railroad tracks, if you so find, and that as the same approached and struck plaintiff and said automobile it was not under reasonable control but was running at a high, excessive and dangerous rate of speed, if so, and that plaintiff was in imminent danger and peril from the approach of said locomotive and train of cars and the proximity of danger arising from the speed and approach thereof, if so, and that the plaintiff did not realize said facts in time to escape therefrom by his own efforts and prevent being struck, if so, and that the defendant Chicago & Alton Railroad Company by and through its agents, servants and employees in charge of said locomotive and train of cars could by using ordinary care have known all of the aforesaid facts, if you find such to be the facts, in time thereafter by the use of ordinary care and the means at hand to have sounded an alarm of danger and warned plaintiff of the foresaid imminent peril, if any, and the proximity of danger from such locomotive and train of cars so approaching him, if so, and thereby have brought to plaintiff a realization of the imminence of such peril, if any, and that by such warning plaintiff could have escaped and averted his said injuries, if so, and that defendant Chicago & Alton Railroad Company

318

failed to cause any danger alarm to be sounded and failed to warn plaintiff of the proximity of danger, if any, and thereby and by such failure, if any, defendant Chicago & Alton Railroad Company was guilty of negligence, if any, and as a direct result of such negligence, if any, plaintiff was struck and thereby injured, if so, then your verdict must be for plaintiff and against both defendant Chicago & Alton Railroad Company and defendant Kansas City, St. Louis & Chicago Railroad Company, and this is the law under this instruction even though you should further find and believe from the evidence that plaintiff was negligent in getting into the position he was in at said time.''

Counsel for appellants criticises this instruction chiefly because, as contended in his first petition for a rehearing, it ''submitted to the jury an issue of primary negligence with a proviso at the end of the instruction that the negligence of plaintiff could not be offset against this primary negligence.'' The instruction did plainly require a finding that as defendant's train ''approached and struck plaintiff and said automobile it was not under reasonable control but was running at a high, excessive and dangerous rate of speed,'' and this is substantially in the language plaintiff used in pleading primary negligence, but a verdict for plaintiff was not authorized on this finding alone. The jury was required to find further that ''plaintiff was in imminent danger and peril from the approach of said locomotive and train of cars and the proximity of danger arising from the speed and approach thereof,'' as well as other circumstances constituting negligence under the humanitarian rule because of failure to warn.

Counsel for respondent endeavor to meet this criticism by citing Richardson v. Kansas City Railways Co., 231 S. W. 938, 941, and Foster v. Kansas City Railways Co., 235 S. W. 1070, 1073. In the Richardson opinion an instruction was not condemned which submitted the case on common-law negligence and conjunctively required a finding pertinent to the humanitarian doctrine, the latter being ''merely one requirement more than was necessary.'' The instruction in that case, however, did not contain any statement covering the whole instruction that would result in an ambiguous or erroneous declaration of law when applied to the required findings. Also, in the Foster opinion an instruction was not disapproved which required a finding that a street car's ''rate of speed was dangerous and not reasonably safe at said time and place, and that in operating said car at said speed, if it was so operated, the defendant was guilty of negligence, as 'negligence' is elsewhere defined by these instructions,'' and also required a finding of other facts and circumstances constituting negligence under the humanitarian rule, but it is significant that even this instruction did not authorize a verdict for plaintiff if the jur.

found that plaintiff "failed to exercise ordinary care for her own safety as 'ordinary care' is defined in these instructions." This closing admonition is in striking contrast to the last clause of Instruction 3 in the instant case, which in effect authorized a verdict fo⸱ plaintiff on the required findings, one of which constituted primary negligence, even though plaintiff was guilty of contributory negligence. Whatever may be said as to the propriety of including acts of other negligence and acts of negligence bringing the case within the humanitarian rule in the same instruction, if they are so conjoined an⸱ qualified by other parts of the instruction as to tender a confusing or erroneous statement of the law, as in this instance, the instruction should be held prejudicial. In such case the error is not mcre' that of placing an additional burden upon plaintiff of which the defendant cannot complain. Where, as here, contributory negligenc was pleaded and presented in other instructions, it presents an apparent contradiction if not a positive misdirection. We hold that the giving of this instruction was reversible error.

In this connection counsel for appellants also assigns error in the trial court's refusal of defendant's withdrawal instruction to the effect that there was "no evidence that the train was negligentl operated at an excessive rate of speed." This and other objections to instruction number 3 are not ruled as it is improbable that they will again arise in another trial of the case.

Counsel for appellants also insists that the trial court erred in giving instruction number 4, requested by plaintiff. This instruction submitted an issue under the humanitarian rule on the theory that plaintiff was in imminent peril from the approach of the train; that those in charge of the train knew, or by the exercise of ordinary care could have known that plaintiff was in peril, and by the exercise of ordinary care they "could have slackened the speed of said locomotive" and failed to do so; and that such constituted negligence which caused the collision and injury complained of.

We find no basis for counsel's suggestion that this instruction submitted the question of whether or not the engineer could have *stopped* the train and so avoided the accident. The word used was *slackened*, meaning slowed down in the sense that more time would have been required for the locomotive to reach the point of collision than if its speed had not been slackened.

The main objection urged against this instruction is that there was no evidence that the collision could have been thus delayed for a sufficient length of time to have permitted the automobile to clear the crossing. The fireman on this engine testified that the train was 75 or 100 feet east of the Arlington Avenue crossing when he first saw the automobile approaching the track; that he yelled and signaled the engineer to stop. The conductor testified that he felt the appli-

cation of the brakes and then it "just seemed but a short time until we was grinding over that crossing." It further appears from the evidence that the front end of the engine when it stopped was about 1360 feet west of the crossing, and that the train approached the crossing at about forty miles an hour. There was also testimony that the engine crew coming from the east had a clear view of this crossing for a distance of about 1000 feet. There was no expert testimony or evidence other than the foregoing as to speed or distance within which the train could have been stopped. However, even if the train had never slackened its speed of forty miles an hour it would have required about twenty-three seconds to cover the approximate distance of 1400 feet within which it was actually stopped. According to the testimony of the fireman and conductor the engineer had succeeded in applying the brakes and they had taken hold before the train reached the crossing although none of the crew saw the automobile until the train was within 75 or 100 feet of the crossing. If the engine crew had observed the automobile in difficulty on the crossing when the train was 1000 feet east of the crossing, as in the exercise of ordinary care they could have done under the evidence, the same handling of the engine would have permitted a slackening of speed for nearly two-thirds of the distance required to bring the train to a standstill. From such evidence alone, without the aid of expert testimony, the jury might well conclude without entering the field of speculation that any slackening of the speed of the train would have delayed its arrival at the crossing for an appreciable length of time. Where, as in Gann v. Ry., 6 S. W. (2d) 39, 41, 319 Mo. 214, it appears from the whole record that the driver of an automobile is conscious of the approaching train and is striving with engine going to clear the track and can do so if given approximately an instant more, the situation speaks plainly for itself to the lay mind without the aid of expert testimony. But in this case the occupants of the car said they knew nothing of the approach of the train until it was upon them. The automobile had run west with the right front wheel just north of the north rail until the front wheels were off the west end of the board crossing. The automobile was then put in reverse gear and backed up again on the crossing, and started north with one or both of the front wheels just across the north rail when the train struck it about the middle or just behind the front wheels. We find no evidence whatever as to the speed of the automobile at that moment or what length of time it would have required to clear the crossing. In this state of the record the jury could only speculate as to whether or not slackening the speed of the train would have prevented the collision. Appellants' criticism of the instruction in this respect is well founded. It follows that appellants' withdrawal instruction as to this issue should

have been given. Also, on a retrial the petition and instructions should be harmonized as to the position of the automobile when signals should have been given or the speed slackened.

■ Appellants next insist that the court erred in giving Instruction 8, at the request of plaintiff, which instruction is as follows:

"The court instructs the jury that while the issue of negligence of the defendants in maintaining a defective bell at the Arlington Avenue crossing at the time and place referred to in evidence is withdrawn from your consideration, nevertheless it is a question for the jury to decide as to whether or not the bell in question was ringing at the time and place referred to in evidence."

We find no reversible error in the giving of this instruction. Defendants' withdrawal instruction necessarily referred to "a defective bell." Defendants also offered and the court gave Instruction No. 19 putting before the jury the issue of whether or not the bell was ringing.

■ Mrs. Sevedge, wife of the plaintiff, was permitted to testify in his behalf, and appellants claim that was error. The disqualification of a husband or a wife to testify for his or her spouse was removed by the Act of 1921. [Laws 1921, p. 392.] The point made is that this injury occurred before this enactment although the trial was had long thereafter. However, this legislation goes to the remedy and is not a retrospective law within the meaning of that term as used in the Constitution. [Coe v. Ritter, 86 Mo. 277, 282; Clark v. Railroad, 219 Mo. 524, 532, 118 S. W. 40.]

Other assignments of error are presented by appellants but we deem it unnecessary to pass upon them for the reason that the circumstances upon which they arise will probably not be presented on a retrial of the cause.

For the reasons above stated the judgment is reversed and the cause remanded. All concur, except *White, J.*, who dissents.