BERT MEESE v. GUY A. THOMPSON, Trustee of the Missouri Pacific Railroad Company, a Corporation, Appellant.—129 S. W. (2d) 847.

Division One, June 14, 1939.

*Thos. J. Cole, Tom R. Moore* and *David E. Blair* for appellant.

F. P. *Sizer*, C. E. *Reed* and *Wm. J. B. Myres* for respondent.

HYDE, C.—This is an action for damages for personal injuries sustained in a collision between plaintiff's truck and defendant's train. The case was submitted solely on negligence under the humanitarian rule. Plaintiff had a verdict for $10,000. Defendant has appealed from the judgment entered.

Defendant makes only one assignment of error, namely: That plaintiff's main instruction submitted failure to slacken the speed of the train, without substantial evidence on which to base such a charge of negligence. Defendant admits that plaintiff's evidence warranted his submission of failure to warn after plaintiff, oblivious to the approach of the train, came into a position of imminent peril. Plaintiff's evidence showed the following facts, which we take mainly from plaintiff's statement, without using quotation marks. [Quotations are from the record.] Plaintiff, on the afternoon (about 5:20 P. M.) of the 28th day of January, 1936, was driving his Ford V-8 truck west on Macon Street, in Carthage, approaching the railroad crossing. (He said "the sun was down real low, shining right square in my face.") The defendant's passenger train, consisting of four coaches and an engine, was approaching the crossing from the south, down a one per cent grade, at a speed (according to the engineer) of approximately forty-five miles per hour. The defendant's track

south of the Macon Street crossing was straight for a distance of 5,030 feet. About 1,200 feet south of the crossing the track passed through a cut. This cut was estimated to be from two feet to five or six feet deep. There was nothing to obstruct the view after the train came out of this cut. The track was downgrade on the whole five thousand feet of straight track south of the crossing. A plat was prepared by Mr. Norvell, civil engineer of the defendant, and he also made certain measurements relative to the distance the train could be seen approaching from the south. This evidence shows that the engineer could see the approach of an automobile from the east for forty feet, when the locomotive was 1,100 feet south of the crossing. The distance between the rails was four feet, eight and one-half inches. Macon Street was a smooth, graveled street, and was slightly upgrade going west approaching the crossing. The difference in elevation at the track was one foot and nine inches above that at the right of way line, fifty feet away, or approximately a three and one-half per cent grade. There was a small bridge or culvert (23 feet long) on Macon Street ninety-four feet east of the track.

Plaintiff had stopped to let a passenger out of his truck at a residence about one hundred fifty feet east of the crossing. Plaintiff then started his truck in low gear, and proceeded toward the crossing. Plaintiff said that his brakes "were good;" and he "could have stopped it right now . . . a couple or three feet; four-wheel brakes can stop awful sudden." About forty feet east of the track, he "stopped and looked" south down the track for the approach of a train, and then looked north. He also listened for a train and heard nothing. He then proceeded toward the crossing reaching a speed of eight or ten miles per hour. Other witnesses for plaintiff said he was going very slow. He did not look south again. Plaintiff never shifted to high gear, but drove onto the right of way approaching the crossing in second gear. When the plaintiff was within about twelve or fifteen feet of the crossing, he changed from second gear back into low gear. Plaintiff said that the Ford truck had slowed up, before he changed to low gear, "to about six or eight miles an hour." Mr. Tryon who was following the plaintiff in another truck, testified that the plaintiff's truck continued toward the crossing and never did slow up perceptibly before it was hit by the train. Mr. Tryon was right behind the plaintiff (he heard no whistle), and thought about going around him, but looked up from the bridge and saw the train, pulled behind the plaintiff's truck and stopped. Mr. Tryon brought his truck to a stop "right to the edge of the right-of-way," and watched the train and the plaintiff's truck approach the crossing. He estimated that the train was "about 375 or 400 feet up the track from the road," when he first saw it from the bridge; that plaintiff was then about fifteen feet from the track, "moving mighty slow;" that the train was only fifty or sixty feet away when he (Tryon) "got

stopped," and that it was going sixty miles per hour. Plaintiff proceeded to go upon the track, and was hit by the locomotive. (Plaintiff said: "Just as I drove upon the track I discovered that the train was on me . . . I was right up on the track.") The engine struck the Ford truck between the front wheels and the cab, a distance of five or six feet back of the bumper. The length of the truck was twenty-one feet from the front bumper to the rear end of the bed. The train was stopped on a curve which began over two blocks south of the crossing. It was a clear day and both the track and street was dry.

It is obvious that these facts, with distances based on the testimony of Mr. Tryon, could not make a case of humanitarian negligence for failure to slacken speed, but at best would leave this matter in the realm of surmise, speculation and conjecture. [Sevedge v. K. C., St. L. & C. Railroad Co., 331 Mo. 312, 53 S. W. (2d) 284; State ex rel. Baldwin v. Shain (Mo.), 125 S. W. (2d) 41; State ex rel. Banks v. Hostetter, 344 Mo. 155, 125 S. W. (2d) 835.] However, plaintiff says that in two seconds more time he could have safely cleared the track and contends that defendant's evidence furnished the additional evidence necessary. This was the evidence of defendant's engineer and fireman. Plaintiff says that the following facts appear from all the evidence and are a sufficient basis for a finding for plaintiff on the issue of failure to slacken speed, to-wit: "(1) The distance in feet the engineer had in which to slacken the speed of the train after he saw the plaintiff in a position of peril (based on the fireman's testimony as to where the engineer whistled); (2) The exact spot the engineer did apply the emergency brakes (fixed by both the engineer and fireman as 60 to 80 feet from the crossing); (3) The distance the train traveled before the brakes took effect and began to slacken the speed of the train (the fireman said there would be some effect by the time the crossing was reached); (4) The distance the train traveled after the emergency brakes were applied (brakeman's testimony was about 1000 feet); (5) The miles per hour the train was traveling at the time the engineer saw the plaintiff in peril (45 miles per hour according to the engineer); (6) The speed of the truck at the time it was hit by the train (plaintiff's evidence); (7) The exact spot where the truck was when it was hit by the train (plaintiff's evidence); (8) The length of the truck in feet (plaintiff's evidence); (9) The distance in feet it had to travel to clear the approaching train (plaintiff's evidence); (10) They consist of the train and the condition of the brakes, track and weather (admitted)." The evidence as to stopping was that the rear end of the train stopped from 600 to 800 feet beyond the crossing and that the length of the train was from 300 to 400 feet.

Defendant's evidence was that plaintiff's truck ran into the side of the engine, bending the blow-off pipe "just to the rear or back of the main driving wheel," breaking off the lid of the journal oil box

behind it, and bending the engine cab steps so they were "bent back in toward the back end of the tank and the bolts broken off of them." Defendant's engineer said the train was going about forty-five miles per hour, not working steam. He further testified: "About six or eight hundred feet south of this Macon Street crossing, I noticed an automobile truck going west, . . . about one hundred fifty to two hundred feet east (of the track). . . . I started to sound the whistle, two longs, the crossing whistle. . . . As the automobile approached, it was coming very slow, and it appeared to me like it was stopping, and all at once it started on again west, on over this crossing, . . . (when) I was between sixty and eighty feet (from the crossing). . . . I don't think it was over ten or twelve feet (from the track). . . . I started to sounding the short sounds of the whistle, and put the brake into emergency. . . . I would judge it takes about two, a second or two for the brakes to take hold." Defendant's fireman was on the left side of the cab and could not see plaintiff. He said that about 1,000 feet from the crossing the engineer sounded two short blasts of the whistle as a signal for shutting off steam. He also said: "I was shutting off the steam, and two more long blasting whistles sounded. About the time I set down on my seat approaching the crossing, two short blasts of the whistle sounded." Both the engineer and fireman also testified that the automatic bell was ringing all of this time.

The fireman further testified, as follows:

"Q. Where did you hear the short blasts with reference to the locomotive approaching the crossing? A. Well, I don't recall exactly how far it might have been, but it was approaching the crossing. Q. Was it before or after you struck the crossing? A. Before we struck the crossing. Q. Do you have any idea how far before? A. It must have been back five hundred feet. . . . Q. Now, as I understood, you state you were about one thousand feet from the crossing when you heard the first two blasts? A. Yes, sir. . . . Q. Did you hear any long blasts after this? A. Yes, sir. Q. How many feet had it traveled at the time? A. Well. Q. Just use your best judgment? A. I don't think we traveled over three or four hundred feet. Q. Then you heard two blasts. A. Yes. Q. And then how far had you gone before you felt the air come on? A. We were about eighty feet of the crossing when he set the brakes. . . . Q. Now then, when he gave these blasts in quick succession, that is what you call the alarm or danger signal, isn't it? A. Yes, sir. Q. And you say when he did that he was five or six hundred feet back south of the crossing? A. Yes, sir. . . . Q. If that air was first applied only eighty feet from the crossing, it would be over the crossing, wouldn't it, going at forty-five miles an hour, before it would ever, before the brakes would take effect, wouldn't it? A. No, I don't think so. Q. Well, what do you think? A. That would

782

have some effect, but wouldn't be no great amount." (Another defendant's witness estimated the distance, of the engine from the crossing, when the short whistles were blown, to be about 300 feet, but he did not see plaintiff's truck either at that time.)

Plaintiff argues that if the engineer had put on the brakes when the fireman heard the short whistles the speed of the train would have been sufficiently slackened so that plaintiff's truck could have cleared the crossing before the engine reached it. Plaintiff fixes the distance, which the engineer had to slacken speed after plaintiff came into a position of imminent peril, as 500 to 600 feet, by taking the fireman's testimony that the last short alarm whistles were begun at that distance from the crossing. Although the fireman did not see plaintiff's truck then or at any time before the collision, plaintiff says he can establish his position at this time by the engineer's testimony that he gave the last short whistles when the plaintiff's truck was about twelve feet from the track, starting toward it again after seeming to stop. The trouble with this argument is that it fixes the distance of the train from the crossing solely by the whistle (the fireman estimated it by the time between this whistle and those farther back), so that plaintiff cannot take this distance without taking the whistle with it. Plaintiff's predicament is that if he admits the whistle then it was error to submit failure to warn; but if plaintiff denies there was any whistle then he has no evidence whatever of sufficient distance in which to slacken speed so as to delay the arrival of the engine at the crossing long enough for the truck to clear the track. He cannot say the jury could find that the fireman heard the whistle at this distance from the crossing and also at the same time believe that there never was any whistle.

█ While a plaintiff is entitled to the benefit of the evidence most favorable to him (including favorable evidence offered by defendant) in consideration of the question of substantial evidence to support his submission, nevertheless "this rule has an exception . . . where the favorable evidence invoked . . . runs counter to some other theory of recovery relied upon by plaintiff." [Dilallo v. Lynch, 340 Mo. 82, 101 S. W. (2d) 7.] "Plaintiff is entitled to the benefit of any evidence offered by defendant which tends to support his theory of the case, and is consistent with his own testimony, but he cannot claim the benefit of any of defendant's evidence which contradicts his own testimony and is at war with his own theory of the case." [Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S. W. (2d) 600; Bollinger v. St. L.-S. F. Railroad Co., 334 Mo. 720, 67 S. W. (2d) 985; Pentecost v. St. L. M. B. T. Railroad Co., 334 Mo. 572, 66 S. W. (2d) 533; State ex rel. Weddle v. Trimble, 331 Mo. 1, 52 S. W. (2d) 864.] If the fireman *had seen the truck* himself, at the time when he said the engine whistled, then plaintiff could have taken the distance at which he said he saw it without the whistle. [Jones

v. C., R. I. & P. Railroad Co., 341 Mo. 640, 108 S. W. (2d) 94.] But on this record, we rule that the fireman's testimony about whistling cannot help plaintiff make a case on failure to slacken speed, because it must be based solely on the truth of a fact that plaintiff asserts is not true.

In the cases cited by plaintiff, holding that a jury case on slackening was made, without evidence to show the amount of slackening possible within the distance available, there was a situation where the plaintiff's car barely failed to clear, so that only the slightest additional time would have been necessary for its escape. In Gann v. C., R. I. & P. Railroad Co., 319 Mo. 214, 6 S. W. (2d) 39, this court said that plaintiff had substantial evidence to show ''that if he (the engineer) had given the automobile time to run one more foot or thereabouts it would not have been struck.'' In State ex rel. Weddle v. Trimble, 331 Mo. 1, 52 S. W. (2d) 864, plaintiff saw defendant's street car come around a curve before his truck got on the track, stopped with only his front wheels over the first rail, and attempted to back off the track. This court said that ''if the truck had moved backward a very little, if any, greater distance than indicated in the Gann case, it would not have been hit.'' In both of these cases, the plaintiff knew the train was coming and was doing his utmost to get off the track. [See also Perkins v. Terminal Railroad Assn., 340 Mo. 868, 102 S. W. (2d) 915, and Hoelzel v. C., R. I. & P. Railroad Co., 337 Mo. 61, 85 S. W. (2d) 126, in each of which the plaintiff almost escaped by turning onto the track and driving ahead of the train.] Here plaintiff says he was not aware of the trains approach, was moving slowly on the track, had no intention of backing off, and had to move his truck, twenty-one feet in length, across the track and beyond the overhang of the engine on the other side to escape. Here, plaintiff's truck was struck in front of the cab. Here, the only evidence about stopping the train was the showing of the distance in which it did stop after the emergency brake was applied, which was at least 1,000 feet and twice the distance plaintiff claims it was from the crossing, even on the basis of the fireman's testimony about whistling. In Kick v. Franklin, 342 Mo. 715 117 S. W. (2d) 284, this court considered a situation with comparable speeds and distances to the most favorable claimed by plaintiff here (considering that plaintiff's car was much longer than the Kick car), and held that there was ''no substantial evidence to support the theory that the speed of the train could have been so slackened as to permit plaintiff's car to clear by going on across.'' Our conclusion on this record is that it is merely a matter of speculation and conjecture whether or not, after plaintiff's truck came into a position of imminent peril, any possible slackening (which is a matter of surmise without evidence on the subject) could have given him sufficient time to get his truck across the track and beyond the overhang of the train on the other side; and that it was prejudicial error to submit it as a basis for recovery.

784

The judgment is reversed and the cause remanded. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur, except *Hays, P. J.,* absent.