JESSIE M. MUNDIS, APPELLANT, v. M. R. KELCHNER, RESPONDENT.— 176 S. W. (2d) 535.

Springfield Court of Appeals, December 8, 1943.

Rehearing denied January 3, 1944.

*Llyn Bradford* and *W. D. Jones* for appellant.

*E. W. Allison* and *Claude T. Wood* for respondent.

BLAIR, P. J.—Plaintiff (appellant here) sued defendant (respondent here) in two counts, one for rent and one for money and other things advanced to defendant, and defendant denied both counts of plaintiff's petition, and filed a counterclaim, alleging change of the rental contract and damages for misconduct on the part of plaintiff and her agent, and asking punitive damages in addition.

The jury found against plaintiff unanimously on the first and second counts of her petition, and ten jurors signed a verdict for defendant on her counterclaim and awarded defendant $400 actual damages and $200 punitive damages, or $600 in all. Judgment was entered on such verdict and plaintiff filed her motion for new trial, alleging nineteen separate grounds therefor. Upon such motion for new trial being overruled by the trial court, plaintiff has appealed.

While plaintiff made so many assignments of error in her motion for new trial, we are only confronted with eleven assignments of error here, and feel that we do not need to consider that many in disposing of the case.

The first assignment that we need to consider is that the trial court erred in permitting defendant to amend by interlineation count III of her answer and counterclaim. This was largely in the discretion of the trial court. Anyway, plaintiff filed no affidavit of surprise. It was the contention of defendant that the written lease, agreed to entirely by an agent of plaintiff, was abrogated by such agent before she ever entered into possession of the premises. Defendant had already alleged in her counterclaim that plaintiff and defendant entered into a *verbal* lease. She had denied in count I of her answer that she had entered into a written lease at all, at least her testimony was that it was not, until the written lease was entirely abrogated, that she entered into possession of the premises. The lease in evidence did not provide that the lease could not be abrogated except by the signature of the plaintiff. The jury evidently believed defendant's testimony, since it found for defendant on the first count of plaintiff's petition.

We are unable to see any error in the trial court permitting defendant to amend such counterclaim and to detail in evidence the facts which she claimed attended the cancellation of the lease. There is no question in the case but that plaintiff's father fully represented plaintiff, and if he agreed for plaintiff that the lease would be abrogated, before defendant entered into possession of the premises, we do not see how an appellate court can interfere in any way.

We regard another assignment as more serious. On cross-examination defendant testified:

"Q. Are you just speculating about the loss of business or are you basing it on the business that you actually had? A. I had to speculate.

"Q. I see. Just a speculation then? A. That's right."

According to defendant's own admission, her actual damages were purely speculative. A finding of compensatory damages cannot rest on guesswork, conjecture or speculation. [17 Cyc. 758; Green v.

Chicago, etc., R. Co., 156 Mo. App. 259, 137 S. W. 1. c. 613; Meese v. Thompson, 344 Mo. 777, 129 S. W. (2d) 1. c. 850.]

Nor do we think the court properly instructed the jury in Instruction D-G-3 that it could find for defendant on the first count of plaintiff's petition, without requiring the jury to find that defendant had paid to plaintiff all that plaintiff was entitled to receive, even if the original lease had been abrogated, as defendant claimed in her answer. Defendant testified that the rent she paid was fair; but the jury should so have found and should have been so instructed before it could find for defendant on the first count of plaintiff's petition. Defendant never did fix any amount as the rental for said premises, even if the original lease was abrogated, as defendant claimed, and the jury had no right to have a roving commission to find for defendant on the first count.

So far as punitive damages are concerned, defendant suffered some actual damages by the turning off of the electricity and the water in the premises occupied by her. The jury had the right to find that such acts by plaintiff's agent were indefensible and malicious, in order to prevent the occupation of such premises by the defendant, and to compel defendant to vacate the premises. If the jury found that defendant suffered some actual damages by having such electricity and water turned off, and that plaintiff's agent acted "maliciously" in so doing, as required by the trial court, the jury had the right to assess punitive damages against plaintiff in favor of defendant on her counterclaim.

Nor are we satisfied with the verdict for defendant on the second count of plaintiff's petition. O. W. Dickerson, father and agent of the plaintiff, testified positively that on March 10, 1941, "I advanced certain sums of money to Mrs. Kelchner for the purpose of buying equipment for this Blackberry Patch. It was my daughter's money that I advanced. On March the 10th I advanced her a check for fifty dollars to buy equipment, on March the 15th another fifty dollars, on March the 20th an additional check for seventy-five dollars, on March the 23rd an additional check for seventy-five dollars, on March the 25th a check for twenty-five dollars, on March 25th a second check for twenty-five dollars, and on March the 29th one for seventy-five dollars," or a total of $375. Defendant first told Dickerson, as he said, that this amount was for equipment, but, in a later letter to him, Dickerson testified that defendant said the amounts were used to pay off a former partner. If that letter and those checks are in existence and are in evidence on another trial, they would likely overcome defendant's simple denial that she got the money and another jury might not find for defendant so readily upon the second count of plaintiff's petition. We have searched the record and fail to find any such exhibits now in evidence.

We do not know what to say about Exhibit B. The original lease was dated January 20, 1941. Exhibit B was dated September 6,

1941, and referred in its last paragraph to a contract bearing date of February 1, 1941. If this was the date of the abrogation of the original contract, as claimed by defendant, it would help out her case very much. If Exhibit B erroneously referred to the original lease of January 20, 1941, as the contract of February 1, 1941, it is very doubtful if defendant could be heard at all to say that the original lease had been abrogated in any other respect than as set out in Exhibit B. As the case must be retried, this matter can be more fully developed then.

There are other assignments of error alleged to have been committed by the trial judge; but we feel that it is unnecessary to notice them, if they have not been already covered, as they are not likely to recur upon another trial. The judgment is reversed, for the reasons given, and the cause is remanded to the Circuit Court for another trial. *Smith* and *Fulbright, JJ.*, concur.