[1] This is a suit to recover damages for personal injuries alleged to have been sustained when a streetcar of the defendant *Page 410 
collided with a car in which plaintiff was riding. There was a verdict and judgment for plaintiff in the sum of $8,500. The defendant company appealed.
[2] Appellant briefed three questions for our review: First, that the evidence was insufficient to submit the case to a jury under the humanitarian doctrine; second, that the instruction on the measure of damages was erroneous for the reason that it authorized a recovery for permanent injuries whereas the evidence did not show any such injuries; and third, that the verdict was excessive.
[3] We shall dispose of the questions in the order stated. The case was submitted to a jury on defendant's failure to warn, failure to slacken the speed of the streetcar, and failure to stop.
[4] The evidence disclosed the following: The collision occurred about 9:00 P.M., on January 6, 1948, near the intersection of St. Charles Rock Road and Boswell Avenue where the latter crosses the defendant's tracks in St. Louis County, Missouri. St. Charles Rock Road runs in an easterly and westerly direction and the tracks of the defendant company run parallel thereto. Prior to the collision the streetcar in question was traveling in a westerly direction and plaintiff's husband with whom she was riding was driving his car in a westerly direction. The home of plaintiff and her husband, where they were intending to go, was north of the tracks. To reach their home from St. Charles Rock Road, it was necessary for them to cross the tracks at Boswell Avenue. When they reached this avenue, plaintiff's husband turned right or north toward the tracks which were located about 20 feet from the parallel road. The automobile, as it crossed the tracks, was struck by the streetcar at about the right rear wheel. If the car had been three feet or so farther north, the collision would not have occurred. Plaintiff's husband testified that while on St. Charles Rock Road he was driving at about 25 miles per hour; that as he approached Boswell, he reduced his speed to about 7 or 8 miles per hour; that he looked both directions for streetcars, shifted his car to second gear, and started up the incline toward the tracks; that he kept looking for cars; that as the front end of his car reached the tracks, he noticed the light of a streetcar toward the east about 70 feet down the tracks; that he increased his speed but did not get across before the collision; that he did not have time to stop and to back. This witness also testified that the streetcar did not seem to reduce its speed any before the collision; that no warning of its approach was given. A witness for the defendant, a passenger on the streetcar, testified he could not say he heard a going sounded. A witness for the plaintiff, a former streetcar operator, testified that a streetcar traveling at 25 miles per hour could be stopped within 50 feet and at 15 miles per hour it could be stopped within 25 feet. The motorman operating the streetcar at the time of the collision testified that he saw the car in which plaintiff was riding while it was on St. Charles Rock Road traveling at about the same speed as the streetcar; that the speed of the automobile was reduced slightly as it turned up the incline toward the tracks and continued on until it was struck by the streetcar. The motorman testified that he applied the brakes and sounded the gong immediately after he noticed the automobile was not going to stop. He stated that the streetcar was traveling at a speed of about 15 miles per hour; that at that speed he could stop the car in about 70 feet; he further testified that the streetcar ran about 70 feet after the collision. The motorman stated the streetcar was only a short distance from the crossing when the automobile drove upon the tracks. As to a warning, the motorman testified as follows:
[5] "Q. `You say you sounded the gong?' A. `Yes, sir.'
[6] "Q. `Where did you sound it?' A. `Quite a ways before he got to the crossing.'
[7] "Q. `Did you sound it all the time that way?' A. `When I got within fifty feet of the crossing.'" *Page 411 
[8] We are of the opinion that not only plaintiff's but the defendant's evidence justified the submission of the case on slackening the speed of the streetcar. The motorman testified the car could be stopped within 70 feet; that it traveled 70 feet after the collision; that he gave a warning when the car in which plaintiff was riding was "quite a ways" from the crossing and the streetcar was 50 feet therefrom. A jury could well conclude that if the motorman had applied the brakes when 50 feet from the crossing the automobile would have passed over the rails in safety. As to a warning, plaintiff and her husband and one of the passengers on the streetcar testified that they heard no warning given. It was, therefore, a question for a jury. The witness who had experience as a motorman testified that a streetcar traveling 15 miles per hour could be stopped within 25 feet and defendant's motorman testified that when the streetcar was 50 feet from the crossing, he sounded the gong as a warning to the driver of the car. We conclude, therefore, that the evidence justified the submission of the case on failure to warn, failure to slacken, and failure to stop. The motorman's evidence justified a finding that he realized before the automobile reached the tracks that the driver did not intend to stop and was in danger of being struck. Appellant cites such cases as Steuernagel v. St. Louis Public Service Co., 357 Mo. 904, 211 S.W.2d 696; Kirkpatrick v. Wabash R. Co., 357 Mo. 1246, 212 S.W.2d 764. In the latter case this court 212 S.W.2d loc. cit. 768 (6,7), quoted with approval the following: "Therefore, the defendant is liable only if he realizes or has reason to realize that the plaintiff is inattentive and consequently in peril." In the case before us the evidence justified a finding that the motorman realized plaintiff's obliviousness and hence the peril in time to have warned, slackened speed, or stopped the streetcar.
[9] As to appellant's complaint that it was error to authorize compensation for permanent injuries to plaintiff, we need only to quote a portion of Dr. Pernoud's evidence which was as follows:
[10] "She will have permanent limitation of motion of the left shoulder, and she will have permanent weakness in her left shoulder, and her arm and forearm and hand, and that is the whole arm and shoulder as a unit, and the normal curviture of the neck will not be restored, and she will have pain in various degrees throughout the remainder of her life."
[11] Finally, appellant says that the verdict of $8,500 was grossly excessive. To this we cannot agree. In addition to the permanent injury above-mentioned plaintiff received many bruises, suffered much pain, was in the hospital for eleven days, was disabled for weeks, and at the time of the trial partially disabled. Plaintiff, as a result of her injuries, was under a doctor's care from the date of the collision to the day of the trial and the evidence was that she would require medical attention in the future. Plaintiff was forty-two years of age at the time of her injury. She was pregnant and gave birth to a child a few weeks after her injury. She has, due to her injury, experienced considerable difficulty in caring for her child. Her shoulder is deformed as a result of a multiple comminuted fracture of the shoulder blade, an injury received in the collision. In these circumstances we cannot say that $8,500 is grossly excessive. Appellant cites the case of Darlington v. Railway Exchange Bldg., 353 Mo. 569, 183 S.W.2d 101, loc. cit. 108 (12). We have read that case carefully and the cases there reviewed. Under the authority of that case we cannot say that $8,500 for plaintiff's injuries is excessive.
[12] The judgment is affirmed.
[13] BOHLING and BARRETT, CC., concur.