MARJORIE HARROW, Appellant, v. KANSAS CITY PUBLIC SERVICE COMPANY, a Corporation, and ROY HEATH, Respondents, No. 41586—233 S. W. (2d) 644.

Division Two, October 9, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, November 13, 1950.

*Harry L. Jacobs, Robert J. Coleman, J. M. Loomis* and *Walter A. Raymond* for appellant.

*Charles L. Carr, A. C. Popham* and *Sam Mandell* for respondent Kansas City Public Service Co.; *Popham, Thompson, Popham, Mandell & Trusty* of counsel.

[645] BOHLING, C.—This is an appeal by Marjorie Harrow from an order awarding the Kansas City Public Service Company, a corporation (hereinafter designated defendant), a new trial in an action wherein she recovered a judgment for $15,000 for the wrongful death of her husband, Charles Harrow. Plaintiff joined Roy Heath as codefendant but the court sustained his motion to dismiss and no further action was taken as to him. Defendant was awarded a new trial on account of error in plaintiff's instruction submitting a recovery under the humanitarian rule for failure to warn, or to slacken speed, or to stop. The facts, briefly, follow:

About 6:30 p. m. October 5, 1946, Charles Harrow, who was 69 years of age, was crossing Troost avenue from the east to the west

at about 3610 Troost, Kansas City, Missouri. This was about 100 to 143 feet south of the south curb line of 36th street.

Troost avenue is 50 to 55 feet wide from curb to curb and double streetcar tracks occupy the middle of the street, the inside rails being about 5 feet apart. There was a distance of about 5 feet between the north and the southbound tracks. The weather was clear. The street was level and dry. It was dark but the street lights were on, as were the automobile headlights; and the streetcar headlight was on dim. The southbound traffic on Troost was heavy, a double line of automobiles were moving south at the time.

Roy Heath testified he was driving his automobile south between 15 and 20 miles an hour, next to the automobiles parked along the west curb and west of the west rail of the southbound streetcar tracks, and that there were automobiles in front of and behind his automobile. Other witnesses put Heath's automobile in the east line of the southbound automobile traffic and on the southbound streetcar tracks, and one witness stated there were only one or two southbound automobiles and Heath's automobile was the last one.

Heath testified that when he first saw Mr. Harrow he was standing between the two streetcar tracks, probably 4 to 6 inches west of the west rail of the northbound tracks, facing directly west and 20 to 30 feet south of Heath.

At the time one of defendant's streetcars was traveling north on the northbound track. The sides of the streetcar overhung the rails 18 inches. The streetcar was coasting, the power was off and it was moving about 12 miles an hour.

The motorman, Paul W. Hinton, testified that he first saw Mr. Harrow about 30 to 40 feet north of the streetcar, standing 4 feet to the west of where the northbound streetcar would pass; that Mr. Harrow was standing perfectly still, facing directly west and he never turned his head or looked in the direction of the streetcar; that Mr. Harrow was not near the west rail of the northbound tracks, and that witness looked down to his left at Mr. Harrow standing there as the front of the streetcar passed Mr. Harrow. After the front of the streetcar passed Mr. Harrow, witness felt something hit the side of the streetcar about 12 feet back of the front and 6 feet behind his seat.

There was no warning signal from the streetcar, and its speed was not slackened.

Mr. Heath testified he did not slow the speed of or swerve his automobile; and that after he passed Mr. Harrow there was a slight thud against the rear of his automobile.

There was evidence on behalf of plaintiff that defendant's streetcar struck Mr. Harrow and spun or threw him against the rear of Mr. Heath's automobile which was traveling in the southbound streetcar tracks.

The streetcar stopped about 20 to 25 feet north of where Mr. Harrow's body was on the southbound tracks. The rear license plate of Mr. Heath's automobile was bent. The motorman examined the streetcar and testified the only mark on it was a brush mark 6 or 8 inches long, shoulder high, [646] about 12 feet back from the front of the streetcar.

Mr. Harrow died on October 10, 1946, from the injuries thus received.

Plaintiff's sole verdict directing instruction, so far as material, read:

"The Court instructs the jury that * * * if you further find that * * * the deceased was standing on Troost Avenue, * * * in Kansas City, Missouri, * * * as mentioned in evidence, within three to twelve inches from the west rail of defendant's north bound street car tracks and within the line of travel of said street car, and that the defendant * * * was operating one of its street cars north on Troost Avenue * * *, and if you further find * * * that the defendant * * * saw or * * * could have seen that deceased was in a position of imminent peril and danger of being struck and injured by said defendant's street car, in time thereafter * * * to have stopped said street car *or* to have diminished the speed of same, *or* to have sounded a signal warning of the approach of same, and if you further find * * * that the defendant * * * could thereby have avoided * * * inflicting upon the deceased the injuries from which he died, * * * *and if you further find and believe from the evidence that the defendant, its operator and agent, failed to sound a signal warning of the approach of said street car, or failed to stop said street car, or failed to diminish the speed of said street car, and that said failure was carelessness and negligence on the part of the defendant, its operator and agent, and if you further find and believe from the evidence that as a direct result of said carelessness and negligence said street car did violently collide with deceased and that as a direct result thereof deceased received injuries from which he died, then plaintiff is entitled to recover* * * *  *.*"
(Italics ours.)

Defendant contends the humanitarian submission of failure to warn was erroneous because there was no required finding of Mr. Harrow's obliviousness.

Defendant relies upon cases to the effect a warning would afford one not oblivious but aware of his imminent peril no greater knowledge than he possesses, and a failure to warn such a plaintiff would not constitute an essential element of his case or a proximate cause of his injury; as would also be the situation if a plaintiff were in a position of inextricable peril. Kirkpatrick v. Wabash Rd. Co., 357 Mo. 1246, 212 S. W. 2d 764, 768[6, 7]; Jordan v. St. Joseph Ry., L., H. & P. Co., 335 Mo. 319, 73 S. W. 2d 205, 208; Pentecost v. St. Louis

Mer. Br. T. R. Co., 334 Mo. 572, 66 S. W. 2d 533, 535; Womack v. Missouri Pac. Rd. Co., 337 Mo. 1160, 88 S. W. 2d 368, 371; Crawford v. Byers Transp. Co. (Mo. App.), 186 S. W. 2d 756, 761 [4, 5].

The issue respecting the necessity of requiring a finding of obliviousness in an instruction submitting humanitarian negligence in the conjunctive for a failure to slacken speed and to warn was before the court in Perkins v. Terminal Rd. Ass'n, 340 Mo. 868, 102 S. W. 2d 915, 920, 921; and a majority of the court there held that it was not necessary to require a finding that plaintiff was oblivious to his peril when the instruction required a finding that plaintiff was in a position of imminent peril, as does the instant instruction.

Barnes v. Terminal Rd. Ass'n, 343 Mo. 589, 122 S. W. 2d 907, 909, followed Perkins v. Terminal Rd. Ass'n, supra. However, the record in the Barnes case discloses that the instruction, so far as material, read: "* * * and if you find * * * that said automobile truck and plaintiff therein became and were in a position of imminent peril of being struck and plaintiff injured by said train * * *, *and that plaintiff was oblivious to said peril,* then if you further find that the defendant * * * could have seen plaintiff and said truck in *such* position of imminent peril * * * in time for defendant * * * *thereafter * * *" et cetera. (Italics ours.) Consult Scott v. Terminal Rd. Ass'n (Mo. App.), 86 S. W. 2d 116, 119.

This contention of defendant is disallowed.

■ Did plaintiff make a submissible case on slackening the speed of the streetcar? Mr. [647] Harrow had stopped on his way across the street from the east to the west. He was standing still, facing the southbound automobile traffic to the west, not moving or turning his head, and was within 3 to 12 inches of the west rail of defendant's northbound streetcar tracks and within the line of travel of the approaching northbound streetcar and, as plaintiff states, "obviously oblivious" of the approaching streetcar and his imminent peril. When struck by the streetcar he was thrown into the rear portion of Heath's southbound automobile. The streetcar, traveling 12 miles an hour, could have been stopped in a distance of 35 to 40 feet. Its speed could have been more readily slackened.

The term "slackened" or "diminished," referring to speed in a humanitarian instruction, is to be construed in a practical sense and means "slowed down in the sense that more time would have been required for the locomotive to reach the point of collision than if its speed had not been slackened." Sevedge v. Kansas City, St. L. & C. Rd. Co. (Banc), 331 Mo. 312, 53 S. W. 2d 284, 287. The humanitarian negligence involved in a failure to stop differs from that involved in a failure to warn or slacken speed in that, broadly put, the avoidance of an impending peril through ability to stop rests solely with the defendant whereas the avoidance of an impending peril

through a timely warning or a slackening of speed presupposes co-operative action on the part of the one imperiled in time to escape.

In the Sevedge case the occupants of an automobile had experienced difficulty in crossing a railroad track, had backed the automobile and then started to again cross the track. The locomotive struck the automobile about the middle or just behind the front wheels. But the occupants of the automobile "knew nothing of the approach of the train until it was upon them." There was no evidence as to what time it would have taken the automobile to clear the tracks and the case on slackening the speed of the train was held not removed from speculation. Sevedge v. Kansas City, St. L. & C. Rd. Co., supra.

State ex rel. v. Shain (Mo.), 125 S. W. 2d 41, 45[8, 9, 11], followed the Sevedge case, and held there was not sufficient evidence to remove the issue of slackening speed under the humanitarian doctrine from speculation and conjecture where one was walking on the end of the ties of a railroad track with his head down and oblivious to the approach of a train, although slackening speed would have given deceased additional time to become aware of the peril and step away.

In the instant case a failure to slacken the speed of the streetcar was submitted as a single, definite, and separate ground for recovery, and was not connected with any other submitted assignment of negligence. Cases wherein a jury issue on slackening speed is made usually involve a situation where plaintiff needs only a slight time to clear. Plaintiff's cases are of this nature. Schaller v. St. Louis Pub. Serv. Co. (Mo.), 223 S. W. 2d 409, 411[1]; Smith v. Thompson, 346 Mo. 502, 142 S. W. 2d 70, 74 [8-10]. See Meese v. Thompson, 344 Mo. 777, 129 S. W. 2d 847, 850[2].

The imminent peril zone of the instant case is narrow. The streetcar, at 12 miles an hour, could have been stopped within 35 to 40 feet. It was about two seconds in time from Mr. Harrow. The motorman was entitled to assume that Mr. Harrow was exercising due care for his own safety and was aware of the approach of the streetcar unless and until something in the conduct of Mr. Harrow indicated the contrary. We are speaking of humanitarian negligence. Kirkpatrick v. Wabash Rd. Co., supra; State ex rel. v. Shain, 349 Mo. 27, 159 S. W. 2d 582, 586; Womack v. Missouri Pac. Rd. Co., 337 1160, 88 S. W. 2d 368, 371. There was at best but a very short time, an instant or two, for slackening speed to be effective. Heath's automobile had not passed when Mr. Harrow was struck. Mr. Harrow was oblivious to his danger. Plaintiff has not met the burden of removing her case upon a duty to slacken speed from the field of conjecture and speculation and planting it on a basis of fact that Mr. Harrow, after Heath's automobile passed, would have acted [648] with sufficient speed to avoid injury while remaining oblivious to the approach of the

streetcar. The Sevedge case, supra, presented as favorable facts for a plaintiff as the instant record. See Meese v. Thompson, supra; State ex rel. v. Hostetter (Banc), 344 Mo. 155, 125 S. W. 2d 835, 838; Kick v. Franklin, 342 Mo. 715, 117 S. W. 2d 284, 288; March v. Pitcairn (Mo. App.), 125 S. W. 2d 972, 976[12]. Consult McGlothin v. Thompson, 347 Mo. 708, 148 S. W. 2d 558, 565.

The portion of the instruction italicized and beginning with the phrase ''and if you further find and believe from the evidence that the defendant * * * failed to sound a signal warning'' to the close of the italics is in substance the equivalent of that portion of an instruction held erroneous in White v. Kansas City Pub. Serv. Co., 347 Mo. 895, 149 S. W. 2d 375, 377[5, 6], and for the reasons there stated is likewise erroneous in this instance.

The imminent peril of a plaintiff is the basic fact for a humanitarian case. Buehler v. Festus Merc. Co., 343 Mo. 139, 119 S. W. 2d 961, 970[11]. We have said: ''It is prejudicial error, in an instruction submitting humanitarian negligence, to inject therein primary negligence of the defendant or contributory negligence of the plaintiff; to require consideration of any antecedent negligence of either plaintiff or defendant which existed prior to the time that the humanitarian doctrine properly commenced to operate; or to predicate recovery upon any different facts than those which actually existed at the time the peril arose * * *.'' Mayfield v. Kansas City So. Ry. Co., 337 Mo. 79, 85 S. W. 2d 116, 123[6], citing cases.

The instant instruction first followed the usual form of a humanitarian instruction by requiring findings that Mr. Harrow was in imminent peril and that thereafter defendant could have avoided injuring him by stopping the streetcar, or by slackening its speed, or by sounding a warning of its approach; but then, instead of following the usual wording of a humanitarian instruction and requiring a finding that defendant was negligent in the respects mentioned, the instant instruction merely required a finding of a failure to warn ''of the approach of said streetcar,'' or a failure ''to stop said streetcar,'' or a failure ''to diminish the speed of said streetcar, and that said failure was carelessness and negligence,'' and that ''as a direct result of said carelessness and negligence'' the streetcar injured and killed Mr. Harrow, and, if so, ''then plaintiff is entitled to recover'' et cetera.

''Instructions should be clear declarations of the law applicable to the facts and if open to two or more constructions, one of which is at variance with the law, the instructions should be refused.'' Schipper v. Brashear Truck Co. (Mo.), 132 S. W. 2d 993, 996 [9], 125 A. L. R. 674. See Evans v. Farmers Elev. Co., 347 Mo. 326, 147 S. W. 2d 593, 601[12]; Piehler v. Kansas City Pub. Serv. Co., 360 Mo. 12, 226 S. W. 2d 681, 684[5].

In the instant case Mr. Harrow was not in imminent peril all of the time he was standing on the tracks when the streetcar was approaching. He could have removed himself from the path of the approaching streetcar had he been alert to the situation. The streetcar could have been stopped within 35 to 40 feet. The last italicized portion of the instruction is not limited to the time Mr. Harrow was in imminent peril, is well calculated to permit jurors to broaden the issue to antecedent negligence, and constituted a confusing and erroneous statement of the law. White v. Kansas City Pub. Serv. Co., supra; Mayfield v. Kansas City So. Ry. Co., supra; Sevedge v. Kansas City, St. L. & C. Rd. Co., 331 Mo. 312, 53 S. W. 2d 284, 286[1].

The fact that the objectionable part of the instruction in White v. Kansas City Pub. Serv. Co., supra, was set out as a paragraph, although separated from the first part of the instruction by a ";" and that the instant instruction is all in one paragraph does not cause the meaning of the instructions to differ and does not justify making a distinction between the instructions.

This was plaintiff's sole verdict directing instruction. The duties involved constituted affirmative essential facts to [649] plaintiff's humanitarian case and the wording permitted the extension of the duties of defendant beyond those existing under the humanitarian rule. We cannot say that such defects were cured by an instruction for defendant that no legal duty was owed Mr. Harrow under the humanitarian doctrine "until after deceased was actually in a position of imminent peril" in the circumstances of the instant case. The two instructions, we think, would be confusing to laymen in that they tended to conflict and the one did not necessarily make clear the defect in the other. State ex rel. v. Ellison, 272 Mo. 571, 199 S. W. 984, 987[4]; State ex rel. v. Shain, 344 Mo. 57, 124 S. W. 2d 1194, 1196[4-6] citing authority; McGrew v. Thompson, 353 Mo. 856, 184 S. W. 2d 994, 998[13]; Bouligny v. Metropolitan L. Ins. Co. (Mo. App.), 133 S. W. 2d 1094, 1097. Plaintiff's case of Wright v. Osborn, 356 Mo. 382, 201 S. W. 2d 935, 939[9], was not concerned with an instruction covering the whole case and authorizing a verdict; and the situation differs from that existing in Larey v. Missouri-K.-T. Rd. Co., 333 Mo. 949, 64 S. W. 2d 681, 684[3, 4].

Defendant also contends that the physical facts show the front end of the streetcar passed Mr. Harrow; that he was never in the path of the streetcar, and that defendant's motion for a directed verdict should have been given. The contention is based principally on testimony to the effect that Mr. Harrow was standing to the west of the streetcar as it passed him; that the motorman felt a contact behind him on the side of the streetcar; and an examination of the streetcar disclosed only a slight brush mark, shoulder high, 12

feet back from the front of the streetcar. There was other testimony to like effect, and also testimony that no marks were found on the front of the streetcar. We have hereinbefore stated the evidence favorable to plaintiff. The result is a conflict in the testimony between plaintiff's witnesses and defendant's witnesses. The evidence falls short of establishing such physical facts as call for a rejection of the testimony of plaintiff's witnesses.

The order granting a new trial should be and is affirmed and the cause is remanded. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.