**Franklin REESE, (Plaintiff) Respondent,**

v.

**ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, (Defendant) Appellant.**

No. 31291.

St. Louis Court of Appeals. Missouri.

May 21, 1963.

Motion for Rehearing or to Transfer to Supreme Court Denied June 25, 1963.

V. James Ruddy, St. Louis, for appellant.

Padberg & Raack, Godfrey P. Padberg, William J. Raack, St. Louis, for respondent.

WOLFE, Acting Presiding Judge.

This is an action for damages arising out of personal injuries which plaintiff suffered when he was struck by one of defendant's street cars. There was a verdict and judgment for the plaintiff, and the defendant prosecutes this appeal.

There is but one point raised upon the appeal, and that is that the plaintiff failed to make a submissible case under humanitarian failure to slacken the speed of the car and to warn of its approach.

The accident here under consideration happened on Delmar Boulevard, in the City of St. Louis. Delmar Boulevard runs to the east and west. To the east of the point of the accident it is intersected by Clara Boulevard, which runs to the north and south. The traffic there is controlled by traffic lights. The next street entering Delmar to the west of Clara is called Del Monte Way. This street does not cross Delmar, but enters into it from the south and ends on the south side. Farther to the west, DeBaliviere Avenue, a north and south street, intersects with Delmar. Traffic at the DeBaliviere intersection is also controlled by traffic lights. Delmar, at the place in question, is 76 feet wide. There are two sets of street car tracks that run down the approximate center portion of Delmar and occupy a strip of the street 17 feet 3 inches wide. The first rail of the westbound tracks is 29 feet 6 inches from the north curb line of Delmar.

The accident occurred on November 9, 1960. At that time the plaintiff lived at 5622 Delmar. This was an apartment house on the south side of the street and a short distance east of Del Monte Way. It was between 6:30 and 7:00 p. m. The evening was damp and overcast with misting rain. The plaintiff had gone to a drug store on the north side of Delmar, at the corner of Delmar and Clara. From there he had gone to a place called "Bottoms-Up Steak House" to get a "six pack" of beer. "Bottoms-Up" was also on the north side of Delmar, and slightly west of a point directly opposite the apartment house where the plaintiff lived. He came out of "Bottoms-Up" with his "six-pack" of beer and started, at a slight angle eastwardly, across the street toward his residence on the south side.

His crossing was about twelve to fourteen feet east of the Del Monte Way intersection. Before he started to cross the street, he looked both to the east and west. Clara Boulevard, according to his estimate, was about 200 feet to his east, and he saw that the traffic light was red, and also that the light on DeBaliviere was red. He saw no traffic between these two intersections as he started to cross to the south. When he was 15 to 18 feet south of the north curb line of Delmar, he looked to the left, or east, and saw no westbound traffic. He then looked toward DeBaliviere for any right-turning traffic that might be entering from there, and there was none. There was nothing to obstruct his vision.

He continued walking at a pace faster than normal, but could have stopped within one step. As he walked from the point in the street 15 to 18 feet south of the north curb line, he continued to look to the west. He saw no street car, heard none, and he heard no warning. He was past the second rail of the westbound tracks when he was struck. He did not know what struck him.

A Mrs. Opal Coombs testified that on the evening of November 9, 1960, she had just come out of the door of the apartment

building at 5322 Delmar. She had taken a few steps, and looking northwest she saw a man struck by a street car. She saw nothing before the moment of impact, and the street car stopped immediately. She said that the occurrence took place right at Del Monte Way.

A police officer who arrived at the scene of the accident a short time after it occurred stated that he walked up to a street car that was "stopped there". He said that there was blood on the street to the left of the car. He said that if you looked down from the driver's seat in the car, you would "just about be looking down at it." The blood was next to the street car, which was the only vehicle in that area.

The defendant put on no evidence concerning liability in this case.

In support of its assertion that the plaintiff failed to make a submissible case, under humanitarian failure to warn and slacken speed, the defendant points to the evidence as it relates to the street car's direction of travel. It is maintained that there is no evidence that the street car involved in the accident was a westbound or an eastbound car.

There was, in fact, no testimony as to the direction that the street car was traveling. There was no evidence as to which track the stopped street car was on. Neither is there any evidence as to whether or not the blood stain by the street car was to the north or the south of the stopped street car. The blood is only placed to the left side of the car, and it could be on that side, no matter which direction the car that struck the plaintiff had been traveling.

However, in passing upon the sufficiency of the evidence to make a submissible case, we must view the facts, and the reasonable inferences to be drawn from them, in a light most favorable to the plaintiff's case. With this in mind, we conclude that a valid inference could be drawn that the street car which struck the plaintiff was westbound. We reach this conclusion from the plaintiff's statement that he was looking to the west at all times after he started to cross the track, and that no car came from the west. It would be reasonable for the jury to infer that he would have seen an eastbound car, while looking in the direction of its approach, when it was immediately upon him. Since he saw no eastbound car, it could be reasonably concluded that the car which struck him was not coming from the west, but was westbound and coming from the east.

The appellant next states that assuming that a westbound street car struck the plaintiff, there is no evidence as to the distance the car traveled to the point of impact. Neither is there any evidence of its speed. There is no evidence as to where the car was when it would become reasonably apparent that the plaintiff was oblivious to the car's approach and the ability of the operator to slacken the speed or give a timely warning thereafter.

The plaintiff-respondent contends that since he looked to the left when he was between 16 feet 4 inches and 19 feet four inches from the place where he was struck, at some place along his line of travel it should have been reasonably apparent that he was oblivious to the approach of the car. In support of his contention that a case was made under the humanitarian doctrine, we are cited by the respondent to Sperry v. Tracy Dodge-Plymouth Company, Mo.Sup., 344 S.W.2d 108; Wofford v. St. Louis Public Service Co., Mo.Sup., 252 S.W.2d 529; McDonough v. St. Louis Public Service Company, Mo.Sup., 350 S.W.2d 739; Sheerin v. St. Louis Public Service Company, Mo.Sup., 300 S.W.2d 483; Stith v. St. Louis Public Service Co., 363 Mo. 442, 251 S.W.2d 693, 34 A.L.R.2d 972; Lang v. St. Louis-San Francisco Railway Company, 364 Mo. 1147, 273 S.W.2d 270; Wabash Railroad Company v. Dannen Mills, Inc., 365 Mo. 827, 288 S.W.2d 926. In all of these cases there is some evidence of the distance that the defendant traveled, the speed, the ability to slacken speed or

stop. None of these factors are present here.

■■ Under the humanitarian doctrine, no duty to act is imposed upon a defendant until a situation of peril arises. This is the time that the doctrine commences to operate, and neither antecedent negligence of the plaintiff or the defendant requires consideration. Mayfield v. Kansas City Southern Ry. Co., 337 Mo. 79, 85 S.W.2d 116; Harrow v. Kansas City Public Service Co., 361 Mo. 42, 233 S.W.2d 644. The often repeated requisites for a humanitarian case are stated in Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482, 1. c. 484. We state them again:

"(1) Plaintiff was in a position of peril; (2) defendant had notice thereof (if it was the duty of defendant to have been on the lookout, constructive notice suffices); (3) defendant after receiving such notice had the present ability, with the means at hand, to have averted the impending injury without injury to himself or others; (4) he failed to exercise ordinary care to avert such impending injury; and (5) by reason thereof plaintiff was injured."

■ The humanitarian doctrine has not altered the rule that the burden of proof is upon the plaintiff. Vietmeier v. Voss, Mo. Sup., 246 S.W.2d 785, and the claimed negligence of the defendant cannot be left to speculation, guess, or conjecture. It is stated in Vietmeier v. Voss, supra:

"Sometimes humanitarian cases require niceties in calculations for the doctrine begins to operate and seizes the facts when imminent peril arises. The duty to make his case is upon plaintiff and he must remove it from the field of conjecture and establish it by substantial evidence of probative value, or by inferences reasonably to be drawn from the evidence. If the evidence presents a situation from which liability or non-liability may be equally inferred, the court must declare that no case has

been made. Krause v. Pitcairn, 350 Mo. 339, 167 S.W.2d 74, 79; State ex rel. Dutcher v. Shelton, 249 Mo. 660, 156 S.W. 955, 965. This involves the question of whether the evidence is in truth substantial, which is one of law, as distinguished from mere conflict in the evidence, which is one of fact for the jury."

There is no evidence in the case before us upon which a jury could, by fact or inference, find that the operator of the car could have reacted by slackening speed or sounding a warning after the plaintiff came into a position of peril. We do not know where the car was at any time or the speed at which it traveled.

All that we have in evidence is that the plaintiff walked upon the defendant's track on a dark and rainy night and was struck by a street car. It is true that we have the distance that he walked from the curb to the point of collision, at a faster pace than normal, and that we also have his statement that when he was out in the street there was nothing to *obstruct* his view as far as Clara Boulevard. But he never saw the car, and from the utter vagueness of the evidence, no one could say where or when the operator of the car could have seen him. In order to bring into play the "niceties in calculations" referred to in Vietmeier v. Voss, supra, we must have some factual basis from which to start calculations, and here we have none.

■ The evidence leaves the second and third requisites for a humanitarian case, as stated in Banks v. Morris & Co., and quoted supra, without proof by fact or inference, and by reason of this plaintiff failed to make a case properly submissible to the jury under the humanitarian doctrine.

The judgment is reversed.

ANDERSON, J., and FRANKLIN REAGAN, Special Judge, concur.

RUDDY, J., not participating.