247 S.W.2d 305 (1952)
MOSS
v.
NEHMAN et al.
No. 28284.
St. Louis Court of Appeals. Missouri.
March 18, 1952.
*306 Walther, Hecker, Walther & Barnard, Herbert E. Barnard and George W. Cloyd, all of St. Louis, for appellants.
Leo Lyng, Russell N. MacLeod and Edward I. Davidson, all of St. Louis, for respondent.
HOUSER, Commissioner.
This is an action for personal injuries arising out of an automobile-truck collision in the City of St. Louis. The trial jury returned a verdict for plaintiff in the sum of $6,000. Defendants appeal from the judgment rendered on the verdict praying for a reversal of the judgment or in the alternative a reversal and remand for a new trial for these reasons: (1) improper injection of the subject of defendants' insurance coverage; (2) improper submission of the case under the humanitarian doctrine; (3) lack of evidence to support the charges of negligence submitted to the jury in the main instruction; (4) improper and prejudicial final argument to the jury; (5) excessive verdict.
(1) Insurance. Dr. Backlar, a medical witness for plaintiff, was asked by defendants' counsel: "* * * when did you see a report of an X-ray examination?" He answered: "I think the report was sent to me by a doctor from some insurance company, I don't know, he went somewhere, but I got a copy of the report that was probably either early this year or late last year." Appellants concede that this reference standing alone would not require a new trial since defendants registered no objection. They contend, however, that prejudice did result from the following references by plaintiff to the matter of insurance. Plaintiff's counsel asked plaintiff: "What damage was there to the car?" Plaintiff answered: "I wouldn'tI couldn't use it hardly, it wasn't worth nothing any more. I had three or four men out to examine it and the men I called up, the owner of the insurance company and nobody would".
Thereafter on cross-examination of plaintiff by defendants' counsel the following occurred:
"Q. Has any doctor told you that you have a tumor in the small of your back? A. Dr. Funsch.
"Q. The fatty part? A. I think the insurance doctor or whatever he is."
There was a motion to discharge the jury in each instance. Appellants claim that these references compel the inference that plaintiff and his witness Backlar were intent upon injecting into the case the issue of insurance coverage of defendants in order to prevent defendants from receiving a fair and impartial trial. They cite Olian v. Olian, 332 Mo. 689, 59 S.W.2d 673, Boyne v. Schulte, Mo.App., 222 S.W.2d 503, Robinson v. McVay, Mo.App., 44 S. W.2d 238, Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S.W.2d 961 and Nolen v. Halpin-Dwyer Const. Co., 225 Mo.App. 224, 29 S.W.2d 215, for the proposition that it is reversible error to fail to discharge the jury upon counsel's timely motion when the issue of insurance coverage of the defendants is voluntarily injected into the trial of a case by the plaintiff.
We do not agree that appellants were prejudiced by these occurrencs. The record in the Olian case [332 Mo. 689, 59 S.W.2d 676] discloses a "persistent and insistent determination" to inform the jury that defendant had liability insurance which would protect him against loss from an adverse verdict. In the Boyne case plaintiff testified that defendant told her to get whatever doctor she wanted to have "because his drivers were all insured, they would take care of me." [222 S.W.2d 504.] In the Robinson case plaintiff's attorney sought to directly introduce into evidence defendant's policy of automobile liability insurance. In the Buehler case [343 Mo. 139, 119 S.W.2d 967] there was full inquiry by counsel on voir dire concerning the Aetna Casualty Company "which writes liability on automobiles and trucks" and the *307 point arose in final argument to the jury in which plaintiff's counsel asked for a $50,000 verdict, argued "don't worry about who we will collect it from," and urged the jury to "leave it to the lawyers in this case to collect it for her". In the Nolen case plaintiff's counsel asked the doctor "who paid for the other treatments?" [225 Mo. App. 224, 29 S.W.2d 210] given plaintiff and the doctor stated that either the Maryland Casualty Company or the defendant paid him. These are aggravated cases in which either the fact was shown that defendant was protected by automobile liability insurance against the hazard of an adverse verdict, or in which the inference was plainly and intentionally drawn. In most of them bad faith on the part of plaintiff or plaintiff's counsel is evident.
In the case at bar, however, the facts do not point necessarily to the inference sought to be drawn and do not indicate bad faith on the part of plaintiff or his counsel. It will be noted that Dr. Backlar's reference to an X-ray report sent to him "by a doctor from some insurance company" was made in answer to persistent cross-examination by defendants' counsel on the subject of X-rays and X-ray reports and in a sense was self-invited. Further, the reference by plaintiff to Dr. Funsch as "the insurance doctor" was made in answer to a question by defendants' counsel on cross-examination concerning a physical condition totally disconnected with plaintiff's injury, namely, a tumor in the small of his back, which was an occupational anomaly which developed during the 21 years plaintiff was working at Ford Motor Company lifting tires off his hip. Plaintiff explained that Dr. Funsch examined him when he worked at Ford Motor Company; that the doctor found the tumor when he went to work at the small arms plant; and that a dozen doctors who have seen it "all say it amounts to nothing." The jury might as well have concluded from plaintiff's testimony that Dr. Funsch found the tumor while examining for an insurance carrier of Ford Motor Company as to have drawn the conclusion that he found it while examining for an insurance carrier of defendants. It was not a direct reference to the insurance coverage of defendants, as contended, and there was nothing to indicate any bad faith on the part of plaintiff. The reference by plaintiff to "the owner of the insurance company" whom he called about damage to plaintiff's automobile obviously referred to plaintiff's own property damage insurance company and not to defendants' automobile liability carrier. This is the impression we receive from reading the record, and apparently was the impression of the trial judge, judging from his remarks made at the time of the ruling. This could not have prejudiced defendants. We rule that the three references to insurance did not prejudice defendants' rights.
(2) Humanitarian doctrine. Appellants claim that there is insufficient evidence in the record to support the action of the court in submitting the case to the jury under the humanitarian doctrine. Under the "most favorable evidence" rule it appears that plaintiff was driving his automobile west in the lane of traffic nearest the center line of a 6 lane, 80 foot street, Gravois Avenue, in the City of St. Louis at about 11 o'clock A.M.; that he "angled up slow" and came to a stop, intending to make a left-hand turn south into Hanover Street, which runs north and south. Traffic from the west was approaching him at the time. Plaintiff waited for this traffic to pass to enable him to complete his turn into Hanover. There was some traffic to his right traveling west but it was not heavy. At the time plaintiff's vehicle stopped there was nothing in back of him for a distance of a block and a half. Fifteen to twenty seconds after plaintiff's vehicle had stopped as described above, his automobile was struck in the rear by defendants' truck, which approached him from the east. Plaintiff had no warning of the approach of the truck. Defendants' truck and plaintiff's automobile were the only vehicles in this lane of traffic. At the time plaintiff's automobile stopped the speed of the defendants' truck was 20 to 25 miles an hour. Defendants' driver could have stopped his truck at any time within 40 feet. At the time of the collision defendants' truck was traveling 10 to 15 miles an hour.
*308 Instruction No. 1 submits the conventional elements necessary for a recovery under the humanitarian doctrine, including these four assignments of negligence, joined in the alternative: failure to stop, or swerve, or slacken speed, or sound a warning.
Citing familiar law that no duty arises under the humanitarian doctrine until a situation of peril arises, Bean v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 782; Setser v. St. Louis Public Service Co., Mo.App., 209 S.W.2d 746; Bauer v. Wood, 236 Mo.App. 266, 154 S.W.2d 356, appellants contend that there is no evidence in the record to show when plaintiff's position of imminent peril arose; that the jury could only speculate, guess and conjecture as to the time when the peril arose. Appellants propose that there is nothing in plaintiff's evidence to rebut the possibility that defendants, at the time or immediately before the collision, were in the act of turning to the right to go around plaintiff's automobile and that thereafter the opportunity to continue the route of avoidance was suddenly foreclosed by other traffic in the lane to their right which plaintiff's evidence "places in the area but does not fix definitely in relation to the point of collision."
Considering the time plaintiff's vehicle remained in a stationary position (15 to 20 seconds) and the speed at which defendants' driver testified the truck was traveling (20 to 25 miles an hour) it is obvious that "at the time the plaintiff stopped, defendants' truck was, according to plaintiff's evidence, somewhere between 435 and 720 feet behind the plaintiff's automobile." (Appellants' brief, p. 27.) On this evidence the jury could have found that the defendants' driver, proceeding in the same lane occupied by the plaintiff's vehicle with an unobstructed view, could and should have noticed that plaintiff's vehicle had come to a stop directly in his path, and thereafter should have seen plaintiff in a position of peril, in time to have avoided the collision. Nevertheless, defendants' driver drove directly into collision with the rear of plaintiff's automobile. Under such circumstances we are not required to fix the precise point when plaintiff's position of imminent peril arose for the purposes of the application of the humanitarian doctrine, for it is obvious that (as appellants concede) a position of imminent peril arose at some point, otherwise a collision would not have occurred. Since plaintiff's position (at rest, obstructing defendants' traffic lane) was open and apparent, certainly at some time and place it became the duty of defendants' driver to employ any and all means at hand to avoid colliding with the plaintiff's automobile. Spoeneman v. Uhri, 332 Mo. 821, 60 S.W.2d 9, loc. cit. 12; Kent v. Kiel, Mo. App., 97 S.W.2d 885, loc. cit. 889; Shelley v. Hall Drive It Yourself Co., Mo.App., 112 S.W.2d 904, loc. cit. 908; Hudlow v. Langerhans, 230 Mo.App. 1160, 91 S.W.2d 629, loc. cit. 638; Housley v. Berberich Delivery, Mo.App., 87 S.W.2d 209, loc. cit. 211; Dodson v. Gate City Oil Co., 338 Mo. 183, 88 S.W.2d 866, loc. cit. 871; Cross v. Wears, Mo.App., 67 S.W.2d 517, loc. cit. 518. It is sufficient to say that the position of imminent peril arose at the moment the defendants' truck approached so near the point of collision that it was or should have been reasonably apparent to the defendants' driver that unless he took preventive steps a collision was reasonably probable. See Kent v. Kiel, supra, 97 S.W.2d loc. cit. 888; Hinds v. Chicago, B. & Q. R. Co., Mo.App., 85 S.W.2d 165, loc. cit. 168; Morhaus v. Hebeler, Mo. App., 104 S.W.2d 737, loc. cit. 739.
With respect to the claim that plaintiff failed to prove that there was no other traffic in the area which might have foreclosed defendants' ability to turn aside, we believe that appellants have overlooked the evidence given by plaintiff's witness Virginia Reily, who testified that she saw plaintiff's automobile standing in the center lane waiting to make a left turn; that she noticed that plaintiff had his hand out when he was stopped there; that she saw him stop there 2 or 3 seconds before he was hit; and that she did not notice any traffic or automobiles to the plaintiff's *309 right. From this evidence the jury might have found that a route of avoidance was open to the defendants' driver. The assignment is ruled against the appellants.
(3) Sufficiency of evidence. It is further contended that there was not sufficient evidence to submit the charges of (a) failure to swerve, (b) failure to slacken speed, and (c) failure to sound a warning.
With respect to (a) we have pointed out that there was evidence from which the jury could find that there was no traffic to the defendants' right at the time of the collision. Furthermore the evidence showed that plaintiff's automobile was struck toward the right and that about two-thirds of the back end of the right-hand side received the impact. From these facts the jury could have found that defendants' driver, with safety to himself, his helper and others, could have avoided the collision if he had swerved approximately 4 feet to the right. The evidence was sufficient to submit this assignment of negligence.
Concerning (b) appellants contend that slackening the speed of defendants' truck could not possibly have avoided the accident; that at most it could have only lessened the impact; that while there was evidence that plaintiff had stopped his car to await the passing of traffic approaching from the opposite direction, a finding that the collision could have been avoided by slackening the speed rests in the realm of speculation and conjecture by reason of the fact that the witnesses for plaintiff indicated that the on-coming traffic was still some distance away at the moment of impact and that plaintiff had definitely testified to a fixed intention of remaining in his position on the highway until he could turn to the left. In support of this assignment appellants cite State ex rel. Banks v. Hostetter, 344 Mo. 155, 125 S.W.2d 835; same caption, Mo.Sup., 128 S.W.2d 1022; Alexander v. Hoenshell, Mo.App., 66 S.W. 2d 164 and Morris v. Seitrich, Mo.App., 118 S.W.2d 46.
An oblivious plaintiff occupying a fixed, stationary position in the path of an on-coming vehicle who relies on humanitarian failure to slacken speed or to warn employs a quite different theory of recovery from such a plaintiff who relies on failure of the defendant to stop or swerve. In the latter instances plaintiff is relying on means of avoidance which are within the exclusive control of the defendant, whereas in the former the means of avoidance are within the joint control of plaintiff and defendant. In the former plaintiff's escape from the position of imminent peril requires the co-operative action of both parties, that of defendant in slackening his speed or in issuing a warning, and that of plaintiff in thereafter moving out of the path of danger. Harrow v. Kansas City Public Service Co., 361 Mo. 42, 233 S.W.2d 644, loc. cit. 647.
In order to sustain a recovery for plaintiff on the basis of failure to slacken speed or to warn there must be evidence revealing a route of escape open to plaintiff at the time imminent peril arises, or that there will be a timely opening of an escape route, and a sufficient length of time available to plaintiff in which to effect plaintiff's escape from the path of danger after defendant issues the warning or retards his speed.
That evidence is lacking in this case. Plaintiff did not show that a route of escape was open to him at the time the situation of imminent peril arose. Nor was there evidence from which the jury could conclude that after the imminent peril arose an available route of escape would have developed in time to accommodate plaintiff if defendants had slowed down or issued a warning. Doubtless plaintiff would have taken advantage of an open route of escape if one had presented itself, for the evidence showed that he intended to make a left turn, held out his arm to signal, partly executed the left turn by angling his car in the direction of the turn, waited 15 to 20 seconds for eastbound traffic to clear, and shifted into low gear in preparation for the forward movement. But there was a line of eastbound traffic in front of plaintiff, with which he would have collided if he had moved forward. Plaintiff waited 15 to 20 seconds for that traffic *310 situation to clear up. There is nothing to show that plaintiff could have proceeded safely across the south half of Gravois Avenue upon the passage of the eastbound Reily and Bolen automobiles. There is no evidence as to the speed of the latter at any given time during the 15 to 20 second interval. We do know that when defendants' truck struck plaintiff's automobile the force of the impact drove plaintiff's vehicle forward and into the eastbound lane where it collided with the eastbound vehicles of Reily and Bolen. All the evidence on the subject places the Reily and Bolen vehicles west of the intersection at the moment of impact. There is no evidence that their automobiles were the last vehicles in the line of traffic. In short, there was no evidence from which the jury could have determined whether the eastbound traffic would have cleared, and whether plaintiff would have had time to move forward the necessary distance to clear the defendants' path, within the period of time that defendants' truck might have been delayed in reaching the position occupied by plaintiff's automobile, without entering the forbidden field of speculation and conjecture. See Rose v. Thompson, 346 Mo. 395, 141 S.W.2d 824; Sevedge v. Kansas City, St. L. & C. R. Co., 331 Mo. 312, 53 S.W.2d 284; State ex rel. Banks v. Hostetter, supra; Harrow v. Kansas City Public Service Co., supra; Morris v. Seitrich, supra. The case is unlike Brungs v. St. Louis Public Service Co., Mo.App., 235 S.W.2d 81. In that case there was an avenue of escape open to plaintiff, the southbound automobile therein having cleared plaintiff's path.
We are unable to follow respondent's contention that plaintiff's position of peril began when defendants moved into plaintiff's lane of travel (which was at Des Peres Avenue, a block and a half east of Hanover); that defendants' driver had 600 feet before reaching plaintiff's stopped automobile "in which to slacken the speed of his truck so as to give the Bolen and Reily cars a chance to clear the intersection." Obviously plaintiff's imminent peril did not arise when the vehicles were 600 feet apart nor thereafter until it became reasonably apparent to the defendants' driver that a collision was reasonably probable unless he took preventive steps. The difficulty with plaintiff's case is that he failed to prove that after defendants' driver approached near enough for this to have been reasonably apparent plaintiff could have extricated himself, if defendants had allowed plaintiff slight additional time by slackening the speed of the truck.
With reference to (c) there was no evidence to support failure to warn as a proximate cause of the accident. If a warning had alerted plaintiff to his danger he could not have proceeded forward because of the eastbound traffic. The jury could only resort to speculation and conjecture as to what he might have done to extricate himself from the peril.
Since the case must be retried there is no occasion for us to pass on assignments (4) and (5). It is quite unlikely that the same point will arise with respect to (4) and it is even more improbable that the evidence on damages and the amount of the verdict, if plaintiff prevails, will be the same on the next trial, so that any opinion which we might express now on these questions would be without value.
For the reasons stated the judgment should be reversed and the cause remanded for a new trial.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the circuit court is, accordingly, reversed and the cause remanded for a new trial.
BENNICK, P. J., and ANDERSON and HOLMAN, JJ., concur.