D. C. DANIELS, Plaintiff-Respondent,

v.

Audrie F. SMITH, Defendant-Appellant.

No. 46928.

Supreme Court of Missouri,

Division No. 1.

May 11, 1959.

John D. Hasler, St. Louis, for defendant-appellant.

Joseph D. Feigenbaum and Max M. Librach, St. Louis, for respondent.

DALTON, Judge.

Action for damages for personal injuries alleged to have been sustained when plaintiff, a pedestrian in a public street, was struck by defendant's automobile and severely injured. The cause was submitted solely on defendant's alleged humanitarian negligence in `failing to swerve the automobile sufficiently to avoid striking the plaintiff. Verdict and judgment were for plaintiff for $20,000 and defendant has appealed.

■ Error is assigned on the court's action in overruling defendant's motion for a directed verdict presented at the close of plaintiff's evidence and at the close of all the evidence, and in giving Instructions No. 1 and No. 5 at the request of the plaintiff. The error, if any, in overruling the motion at the close of plaintiff's evidence was waived when defendant offered evidence in his own behalf, hence we need not further consider the assignment. Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601, 607.

■ In order to determine whether the court erred in ruling the motion presented at the close of all the evidence a review of the evidence favorable to plaintiff is required. We shall state the evidence in the light most favorable to plaintiff, give him the benefit of all favorable inferences arising therefrom and disregard defendant's evidence unless it aids the plaintiff's case. Mincielli v. Sloan's Moving & Storage Co., Mo.Sup., 303 S.W.2d 17, 19; Wattels v. Marre, Mo.Sup., 303 S.W. 9, 10.

■ Plaintiff, a fireman for the St. Louis Fire Department, but off duty at the time, was struck and injured about midnight on April 1, 1957, as he and a companion, L. Z. McCowan, were standing near the center of Delmar Boulevard in St. Louis at a point about one-half block west of Vandeventer

Avenue. Delmar is an east-west paved street and, at the point in question, is forty-three feet in width. At the time mentioned, automobiles were parked at the curb on each side of the street. Plaintiff had parked his automobile at the south curb, headed east, and he and his companion were crossing to a business place located on the north side of Delmar. The next intersecting street to the west was Sarah Avenue, some two blocks distant. The pavement was dry, the weather mild and clear, the street lights were on and they gave a "pretty good light" in the area where plaintiff and his companion were crossing.

No automobiles were seen moving in either direction on Delmar at the time plaintiff and his companion started across. When they reached the white line in the center of Delmar, they saw traffic approaching on the north side of the street, going west from the Vandeventer intersection, and both stopped on the white center line. Some of these westbound automobiles were "pretty close" to the white line causing plaintiff and his companion to consider moving back south. Accordingly, both of them looked west and didn't see any traffic very close and, as they looked west, both of them stepped backward off of the white line. Plaintiff stepped back one full step to a point about two feet south of the center line, while his companion stepped back to a point about one foot south of the white center line. Plaintiff stood about two feet east of his companion. When plaintiff stepped back, the lead car of the westbound group was about twenty-five feet away to the east and defendant's eastbound car was about one hundred feet to the west of the place where plaintiff was standing.

When plaintiff and McCowan looked west, while they saw defendant's automobile approaching, it was a "good way up the street" and its lights were on. Plaintiff could see the outline of the driver's face and he appeared to be looking straight at plaintiff and his companion. The automobile appeared to be about five or six feet

out from the left hand side of the automobiles parked at the south curb of Delmar.

As soon as plaintiff and his companion had looked west and stepped back south of the center line and had observed defendant's automobile and its driver, they both looked back to the east and stood watching the westbound automobiles moving on the north side of the street. One of these automobiles passed within one foot of the center line of Delmar. Some eight or nine westbound automobiles were approaching or passing. Plaintiff was standing still in the mentioned position not more than two feet south of the white center line of the street, when he was struck and knocked down by defendant's automobile. The automobile was stopped within about one car length after plaintiff was hit. The automobile did not strike plaintiff's companion who stood one foot closer to the center line of Delmar. At the time plaintiff was hit, he had on a pink shirt, light pants, a "bluish" or light blue coat and a grey hat.

Since some of defendant's testimony tends to support the plaintiff's case, we shall review a portion of it. Defendant said he was operating his automobile in his proper lane on the south side of Delmar going east at about twenty to twenty-five miles per hour. He had not been required to stop at Sarah Avenue and had proceeded on east on Delmar. His automobile was about in the center of the space between the parked cars on the south side of Delmar and the white line in the center. Defendant saw plaintiff and his companion leave the south side and walk at a "medium walk" to the center of Delmar and stop. Defendant had slowed his automboile from twenty or twenty-five miles per hour down to fifteen miles per hour by the time he was thirty-five to forty feet west of where the men were standing. When the men stopped at the center line, the defendant saw plaintiff turn and look toward him. Defendant's headlights were on and he could plainly see plaintiff's face. Plaintiff was further away from defendant than the person with plain-

tiff. Plaintiff's companion also looked at defendant, but just turned his head, while plaintiff moved his whole body. Defendant did not notice whether plaintiff changed his position at that time. "It just seemed like he just turned and looked at me and I was watching him." Defendant had his foot on the brake to stop, if he had to, but he wasn't actually braking the car at the time.

Defendant was able at no time to estimate the distance between the left side of his automobile and the center line of the street. He said he was watching the two men and had plenty of room to pass them on the south side. As to what next happened, the defendant testified: "Well, they turned around *and looked at the other way* and they stood there *and I naturally pulled so I could miss them*, didn't have no idea of hitting them because I was far enough away from them, I couldn't. The cars were coming and one car here had just passed me and I was passing in behind him (plaintiff) like anyone was driving along and just as I got to him, I don't know whether he stumbled, whether he staggered or whether he lost his balance, anyhow, *I didn't know a thing until I had hit him and that is all I can say.* * * * They stopped in the center of the street and I seen them. * * * Mr. Daniels turned his body and faced me and I looked and he turned back, and *I then I assumed that he was set* and the cars had started passing him in front and I say, *I pulled to the back* and passed him in the back, and just as I got to him, I had passed Mr. McCowan and he stepped right square in front of my car * * * *and done so sudden I couldn't realize it.* * * * Naturally I kept my eye on them. * * * I never even thought about him stepping back. * * * I was so far enough away from him, I figured I had plenty of room to pass him. * * * Well, all I can say, I was in the center about half way in my center line from the cars parked on my right and him on my left and if, and *I think, because I don't know, I know I made a jog to miss him here and how he got in front of my car, I will never know yet to this day.* * * * I was going in behind him, and what made him move back in front of me, I have never found out, figured out yet to this day, *and how he got there, I don't know.* * * * *I never saw the man step back until after I hit him and I couldn't realize how he ever got back there.*" (All italics ours.)

Defendant further testified, several different times, that although he was watching to the front at all times, and watching plaintiff and his companion, he never at any time saw them move off of the center line of the boulevard. Defendant said his speed was not over five or ten miles per hour when he struck the plaintiff; and that the left front fender and headlight struck plaintiff and his body went up on the hood.

It is apparent that the jury could infer and find from defendant's own testimony that defendant saw and knew that plaintiff was apparently oblivious of any danger; that plaintiff and his companion were looking in the opposite direction when plaintiff was struck; that, regardless of whether plaintiff moved or didn't move, defendant did turn his automobile to the right intending to pass behind plaintiff, but did not turn far enough; that defendant himself didn't see or know how plaintiff came to be in the path of defendant's automobile, but that he did drive his automobile directly into plaintiff and injure him. A jury could disbelieve that part of defendant's testimony concerning any last second movement of plaintiff, which movement defendant admits he did not see and, instead, believe plaintiff's testimony and the testimony of his companion, that they had not moved from the location they had assumed when defendant's automobile was some one hundred feet away to the west.

If defendant was operating his automobile at fifteen miles per hour when he was thirty-five to forty feet from plaintiff, it is apparent that he would have needed only an instant more than his reaction time to have swerved his automobile one foot or

more to the right and have avoided striking plaintiff. At fifteen miles per hour the defendant was traveling at only twenty-two feet per second and only a little more than sixteen feet in three-quarters of a second, the usual reaction time. On defendant's own testimony he had more than two seconds in which to turn aside in the last thirty-five or forty feet and miss plaintiff, since defendant said he had slowed his automobile to five or ten miles per hour before he struck plaintiff.

Appellant, in support of his contention that plaintiff failed to make a submissible case for the jury cites Moss v. Nehman, Mo.App., 247 S.W.2d 305; Bean v. St. Louis Public Service Co., Mo.App., 233 S.W.2d 782; Lotta v. Kansas City Public Service Co., 342 Mo. 743, 117 S.W.2d 296. We are unable to see how any of these cases support appellant's position in view of the record here. For example, in the Moss case defendant's truck approached and struck plaintiff's vehicle from the rear, while it was stopped in the street waiting to make a left turn. The evidence showed that defendant's truck, which approached fifteen to twenty seconds after plaintiff stopped, could have been turned aside and the collision avoided. The court held that a submissible humanitarian case of negligent failure to swerve was made out. 247 S.W.2d 305, 309(6). In the Bean case [233 S.W.2d 787], the plaintiff crossed in front of an approaching streetcar and stopped within the overhang of the car, where he was struck and injured, but plaintiff's evidence failed "to place the position of the streetcar at the time his peril arose" (at the time he stopped) and no case was made for the jury. In that case the plaintiff was not entitled to defendant's evidence since it was "completely at variance with the plaintiff's testimony."

Appellant argues that on plaintiff's testimony, "plaintiff was not in the path of defendant's car when he was standing two feet south of the center line"; that he was not oblivious, as he had seen defendant's automobile and knew of its approach; that

there was no evidence that plaintiff "was ever in defendant's path for sufficient time in which defendant reasonably could have avoided colliding with him"; that there was "no evidence of defendant's car ever changing its course and moving nearer to the center line as it came east"; that "there was no showing in any way when the zone of peril arose, if any; or what kind of turning operation by defendant would have avoided striking plaintiff * * *"; that there was no testimony "to aid the jury in placing the defendant's car at the point where the alleged zone of peril arose"; that the jury was left to speculate; and that "there was absolutely no evidence that defendant's failure to swerve caused the collision." Plaintiff did not see defendant's automobile except when he looked west and saw it approaching one hundred feet away. He relied on defendant's evidence to show the speed and movement of defendant's automobile as it came forward and struck and injured the plaintiff.

Plaintiff at no time testified that he was not in the path of defendant's automobile after he stepped back from the center line. Instead, he said that defendant's automobile was about one hundred feet away; that the driver appeared to be looking at him; and that the car was some five or six feet out from the left side of cars parked at the south curb.

■ Appellant's theory is that plaintiff's evidence failed to "create a factual situation" showing exactly when plaintiff came into a position of imminent peril imposing a duty on defendant to act and avoid injuring the plaintiff. Appellant insists that on plaintiff's evidence the plaintiff "could not have been struck by defendant's car *unless defendant had swerved to his left by two or three feet*"; and that "every fact surrounding the situation is left to conjecture and speculation and no testimony except that of defendant's accounts for the occurrence." Appellant fails to recognize that plaintiff could have the benefit of some of defendant's evidence. We find no such conflict between plaintiff's and defend-

ant's testimony and theories as prevents plaintiff from having the benefit of that part of defendant's testimony tending to show that he turned his vehicle to the right to avoid striking plaintiff, but failed to turn it sufficiently to do so. Plaintiff was entitled to the benefit of defendant's favorable evidence, since it was not contradictory of nor in conflict with plaintiff's personal testimony, nor his theory of the case, as pleaded and proven. Miller v. Riss & Co., Mo.Sup., 259 S.W.2d 366, 371; State ex rel. Baldwin v. Shain, Mo.Sup., 125 S.W.2d 41, 43; Heitz v. Voss Truck Lines, Mo.Sup., 175 S.W.2d 583, 584.

Appellant argues that "defendant's duty * * * did not arise until plaintiff was in real, certain and impending danger of being struck"; and that, after imminent peril "arose and plaintiff could no longer remove himself", the defendant could not have effectively swerved and avoided striking plaintiff. Appellant says there was *no evidence* that defendant could thereafter have avoided striking plaintiff. Appellant further argues that plaintiff was not in imminent peril during all of the last three and one-half seconds before he was struck by defendant's automobile because plaintiff "could have easily removed himself in one second or less"; that "the duty did not devolve on defendant to swerve until plaintiff could no longer safely extricate himself"; and that the defendant could have well expected that plaintiff would step back to the center line where he had been before defendant's car arrived at the point where plaintiff was standing. We find no merit in these contentions.

█ It is apparent that appellant has failed to give plaintiff the benefit of the most favorable evidence rule and instead, presents an extended argument as to the credibility, weight and value of plaintiff's testimony and insists that it conflicts with less favorable evidence. In ruling the issue presented we have disregarded the less favorable evidence. Further, defendant was required to act on reasonable appearances and the appearances here were that

plaintiff and his companion were looking in the opposite direction, apparently oblivious of any danger from defendant's automobile and evidencing no intention of stepping out of its path or stepping back to the center line. "It is the reasonable appearances of the situation that imposes the duty to act." Ukman v. Hoover Motor Express Co., Mo.Sup., 269 S.W.2d 35, 38; Hayes v. Coca-Cola Bottling Co., Mo.Sup., 269 S.W.2d 639, 642; Turbett v. Thompson, 363 Mo. 577, 252 S.W.2d 319, 321.

Appellant construes plaintiff's knowledge that an automobile was approaching eastbound on the south side of the street as knowledge by plaintiff that the automobile would likely hit him, even though plaintiff had observed the driver looking directly at him before plaintiff looked east. The evidence would support a finding that plaintiff was oblivious of any danger and that such should have so appeared to defendant.

It is further apparent that appellant misconstrues the humanitarian doctrine as applied in this state. Appellant has overlooked those cases which hold " * * * 'that it is of no consequence what brings about or continues the peril, even though it be sheer hardihood or recklessness. This covers the whole range of self-exposure to peril from mere negligent inattention to utter, audacious and continuing disregard of known and avoidable danger.' State ex rel. Kansas City Public Service Co. v. Bland, 354 Mo. 868, 875, 191 S.W.2d 660, 662. Dwinell v. Thompson, Mo.Sup., 243 S.W.2d 988, 990, 991." Wyckoff v. Davis, Mo.Sup., 297 S.W.2d 490, 494; Sheerin v. St. Louis Public Service Co., Mo.Sup., 300 S.W.2d 483. Defendant could not drive his automobile into and against plaintiff, even if plaintiff could have moved, but did not. As stated, defendant was required to act upon reasonable appearances and exercise the highest degree of care to avoid injury to plaintiff.

The favorable evidence tends to show that defendant saw and knew that plaintiff was looking in the opposite direction; but defendant, nevertheless, drove and operated

his automobile directly into and against the plaintiff. As stated, the jury could infer and find from defendant's testimony that defendant did see plaintiff; that plaintiff was in the path of defendant's automobile; and that defendant realized the necessity of turning to the right before he reached the plaintiff or before plaintiff moved, as claimed; but that defendant failed to turn sufficiently to the right to avoid a collision. We must also accept plaintiff's evidence as true that plaintiff had not changed his position since he first saw defendant one hundred feet away.

■ Appellant further asks, "When did plaintiff's imminent peril arise", and when should defendant have "flicked the steering wheel slightly to the right" to avoid hitting plaintiff? We think that issue was for the jury. The exact point where the position of peril began and when defendant should have acted was for the jury to determine under the evidence. Perkins v. Terminal R. Ass'n of St. Louis, 340 Mo. 868, 102 S.W.2d 915, 923(13); Hendershot v. Minich, Mo.Sup., 297 S.W.2d 403, 407; Wofford v. St. Louis Public Service Co., Mo.Sup., 252 S.W.2d 529, 533. It is clear that imminent peril arose at some point prior to the collision. On plaintiff's evidence, the plaintiff had not changed his position from a point two feet south of the center line and defendant drove forward some one hundred feet before striking plaintiff. The zone of peril was extended by plaintiff's apparent obliviousness to any danger from the approaching automobile. A position of imminent peril arose at the moment the defendant's automobile approached so near the point of collision that it should have been reasonably apparent to the defendant in the exercise of the highest degree of care that unless he took preventive measures and turned his automobile aside, a collision with plaintiff was reasonably probable. Moss v. Nehman, supra, 247 S.W.2d 305, 308(3,4); Frandeka v. St. Louis Public Service Co., 361 Mo. 245, 234 S.W.2d 540, 547 (10–14).

Considering the evidence favorable to plaintiff, as we must, and the reasonable inferences to be drawn therefrom, we must and do hold that the evidence was sufficient to make a submissible case against defendant and to warrant a finding in plaintiff's favor on the issue of humanitarian negligence in failing to swerve his automobile and avoid striking plaintiff, as submitted in plaintiff's Instruction No. 1, hereinafter referred to. Nelson v. O'Leary, Mo.Sup., 291 S.W.2d 142, 147(5–6); Hayes v. Coca-Cola Bottling Co. of St. Louis, supra; Pulley v. Scott, 362 Mo. 1217, 247 S.W.2d 767, 768; Dister v. Ludwig, 362 Mo. 162, 240 S.W.2d 694, 700; Perry v. Dever, Mo. Sup., 303 S.W.2d 1, 6(9–11).

■ As to Instruction No. 1, appellant first contends that the instruction was erroneous because it did not contain the proper constitutive elements of a humanitarian submission under the law, in that, it did not require a finding that plaintiff came into *and remained in* a position of peril until he was struck and injured. Appellant says that the instruction "does not exclude the proposition that plaintiff Daniels had removed himself subsequently to once having been in a 'dangerous' position." The instruction required a finding that " * * * plaintiff *came into a position of imminent danger* of being hit by the automobile driven by defendant; and if you further find and believe from the evidence that defendant either saw or by the exercise of the highest degree of care *could have seen plaintiff in such position of imminent danger, if any,* in sufficient time thereafter for defendant, by the exercise of the highest degree of care, with the means and appliances at hand and with safety to himself and his automobile, *to have swerved the said automobile sufficiently to have avoided its striking plaintiff*; and if you further find and believe from the evidence that, by so doing, he would have avoided striking plaintiff with said automobile; and if you further find and believe from the evidence that he failed to do so; and if you further

find and believe from the evidence that such failure, if any, was negligence * *." (Italics ours.) Appellant says the first clause should have read that "plaintiff came into *and was in* a position of imminent danger" and that such a finding was necessary in order for the instruction to fix the time when "defendant was chargeable with doing something about it." Appellant says that "the instruction should have made manifestly clear *when* the plaintiff became entitled to the benefit of the highest duty on the part of defendant", because, under the facts here, plaintiff had walked across and "come into" the path of defendant's car when he moved north to the center line of the street; that he had passed out of the danger zone once and had stopped at the center line and then, subsequently, had moved two feet backward, putting himself near the projected course of the moving car a second time.

■ We think the instruction, in view of the evidence, sufficiently required a finding that plaintiff came into, was in and remained in a position of imminent peril a sufficient time for defendant thereafter to have swerved his automobile; and that the jury would not have been misled or confused by the instruction. Compare the language used by the court in Paydon v. Globus, Mo. Sup., 262 S.W.2d 601, 603(1); Welch v. McNeely, Mo.Sup., 269 S.W.2d 871, 876 (6, 7). We do not find the instruction "misleading, ambiguous and indefinite in reciting the causal connection between the alleged negligence of defendant and the occurrence which caused plaintiff's injury." Plaintiff was not in imminent peril or danger when he crossed in front of defendant the first time. Defendant himself said plaintiff crossed at a "medium walk", cleared the path of defendant's automobile and stopped at the center line. No peril or danger to plaintiff at that time was shown by the evidence. Appellant cites Wofford v. St. Louis Public Service Co., supra, 252 S.W. 2d 529, 533. Of course, "under our practice the jury must find that plaintiff *was* in peril, and it must then determine whether such

peril was, in fact, discoverable * * * soon enough for defendant to have avoided the collision by the use of the means submitted * * *." The instruction does not violate that rule.

Appellant also contends that, as the latter part of the instruction was written, "if the jury found defendant *struck* plaintiff, it could, without doubt, have found him (defendant) negligent", while a proper instruction should have submitted "whether the failure to use such *submitted means* was negligence." Appellant's theory is that the words "failed to do so" refer to "have avoided striking plaintiff" and not to the words, "to have swerved the automobile sufficiently." We think the instruction sufficiently submitted the failure of defendant to swerve his automobile as humanitarian negligence.

■ The instruction, after submitting a finding for plaintiff, concluded with these words: "* * * and this is true, even though you may further find and believe from the evidence that plaintiff himself was guilty of negligence, if any, which directly contributed to the negligence, if any, of the defendant, as aforesaid." Appellant contends that these words "injected prejudicial antecedent negligence of defendant in relation to plaintiff's own conduct"; and that "such queer language confused and misled the jury and in effect made defendant responsible for some unspecified act of plaintiff."

We do not consider this portion of the instruction prejudicial. We think a jury would construe the words "contributed to" as used in the instruction as meaning "joined or combined with" the negligence, if any, of the defendant in causing the collision and injury, if any. Substantially, the same form has frequently been approved. Abernathy v. St. Louis Public Service Company, 362 Mo. 214, 240 S.W.2d 914, 920; Newman v. St. Louis Public Service Co., Mo.Sup., 244 S.W.2d 45, 46; Nelson v. O'Leary, supra, 291 S.W.2d 142, 148. The assignment is overruled.

Instruction No. 5 is as follows: "The Court instructs the jury that the term 'highest degree of care', as that term is used in these Instructions, means such care as a very careful and prudent person would ordinarily exercise under like or similar circumstances; and that the failure to exercise such care, constitutes 'negligence', as that term is used in these Instructions."

Appellant says that this instruction "complemented Instruction No. 1", and "when read in the light of certain erroneous and misleading clauses in the latter instruction, it took on broader meaning and in effect extended the scope of the definitions of 'highest degree of care' and 'negligence' to include conduct of the defendant beyond the humanitarian doctrine." Appellant admits that "this instruction standing alongside a correctly drawn humanitarian doctrine instruction, would be proper", but says that in this case it amplifies the errors in Instruction No. 1. Appellant also insists that "Instruction No. 5 clearly connected the 'negligence' of defendant as improperly suggested in the 'tail' clause of Instruction No. 1 with the 'failure' to exercise the highest degree of care as required by Instruction No. 5 * * * and thus brings the use of Instruction No. 5 within the objection stated in Reiling v. Russell, [348 Mo. 279] 153 S.W.2d 6." In the Reiling v. Russell case a humanitarian negligence instruction stated "the duty of persons operating automobiles on any public highway" as applied in primary negligence cases; and it was held that the giving of the instruction was error because it confused primary and humanitarian duties and the jury "may have believed that * * * they should return a verdict against defendants because of excessive speed or some other act of negligence occurring before plaintiff's perilous situation arose." See Reiling v. Russell, 348 Mo. 279, 153 S.W.2d 6, 7, 9; Anderson v. Prugh, 364 Mo. 557, 264 S.W.2d 358, 364; Downing v. Dixon, Mo.Sup., 313 S.W.2d 644, 648; Barnes v. Jones, Mo.Sup., 306 S.W.2d 512, 515(2).

Appellant admits that Instruction No. 5 differs from the instructions considered in the above cases, but still insists that there is error "by direct association" and that the instruction is erroneous because it "permitted the jury to hold defendant to the *highest degree of care at all times* as used in erroneous Instruction No. 1, thus injecting antecedent negligence."

Instruction 5 does not refer to or state any duty of defendant under the facts in evidence in this case except as submitted in Instruction No. 1, which we have held not to be prejudicially erroneous, nor is there any reference in Instruction No. 5 to the duty of an operator of a motor vehicle on a public highway. The instruction contains only a definition of specific terms used in the instructions in the case. The authorities relied upon do not support appellant's contention. We do not consider the instruction erroneous. See Fantin v. L. W. Hays, Inc., Mo.Sup., 242 S.W.2d 509, 513. The assignment is overruled.

The judgment is affirmed.

All concur.