**818**

Kenneth H. DICK and Marvalee Dick,
Respondents,

v.

R. A. POTTS, d/b/a Potts Construction
Company, Appellant.

No. 23664.

Kansas City Court of Appeals.

Missouri.

Feb. 4, 1963.

William F. Brown, James E. Durley,
Sedalia, for appellant.

W. K. Gibson and Martin, Gibson &
Gardner, Sedalia, for respondents.

MAUGHMER, Commissioner.

Plaintiffs had a verdict and judgment against defendant in the amount of $700 for damages allegedly sustained by reason of breach of warranty covering a roof installed by defendant on plaintiffs' house. The sole issue preserved on appeal is whether or not the court erred in overruling defendant's motion for directed verdict at the close of all the evidence.

The plaintiffs, Kenneth H. and Marvalee Dick, husband and wife, during the year 1953, built a residence on a lot owned by them in Sedalia, Missouri. Mr. Dick said he had been a "builder" of houses for about six years, but had never worked with roofing materials, nor was he a "roofer". The Dick residence was a six-room house with an attached garage. It was to be constructed with a flat roof and after some negotiations such a roof was purchased from defendant. This particular roof was described as a "Johns-Manville Specification 15 year Tar Saturated Built Up Roof". It was applied or put on plaintiffs' residence by defendant, who was paid the full contract price. Defendant gave plaintiffs a written warranty or Roof Guarantee which reads:

"Potts
"BUILDING SUPPLY
"IF YOUR ROOF LEAKS DON'T
GET A BUCKET GET POTTS

"Phone 396

"SEDALIA, MISSOURI

"August 24th. 1953.

"ROOF GUARANTEE.

"This is to certify that the Potts Construction Co. 420 W. 16th, St. Sedalia, Mo. applied a Johns-Manville

Specification 15 Year Tar Saturated Built Up Roof on residence for Kenneth Dick, located 1617 W. 18th. St. Sedalia, Mo. And the said Potts Construction Co. does hereby on this 24th. day of August 1953, guarantees said roof for a period of 15 years, against defective materials or workmanship. In accordance with Johns-Manville Specifications.

"Signed, Potts Construction Co.
"by, R. A. Potts
"Title, Owner".

Kenneth Dick testified that two weeks after installation the roof leaked "where the garage and living room join" and he had to replace a section of the ceiling. He said defendant "came out and repaired the roof". It was his testimony that about two years later more leaks developed, that "the ceiling broke loose in the den", that "he punched holes in the plaster to let the water through. We would try to catch it in pails to keep it from ruining the floor". Once more defendant, Mr. Potts, came out and repaired, but it broke through again. He stated that thereafter roof water came through into every room in the house except possibly the kitchen, and that finally in February, 1958, he and Mrs. Dick erected a sloping or hip roof on the house. He estimated that he spent $1000 in repairing the house damage caused by these leaks. He expressed his opinion that the house value after the leaks was $1500 less than before.

The testimony of Mrs. Dick was substantially the same as that of her husband. However, she said they spent $380 in repairing the den two weeks after installation and she thought they spent about $1286 in other repairs about the house. Later she expressed her belief that their cost of repairs due to water damage alone amounted to $936.

Two neighbors called by plaintiffs substantiated their claims that the roof leaked and that pots, pans and buckets were placed on the floor to catch the drippings.

The defendant, R. A. Potts, was placed on the witness stand by plaintiffs. He said that Mr. Dick talked with him about a "bonded roof" which carried an additional $50 minimum charge. Mr. Potts said he told plaintiffs that the 15 year roof that plaintiffs bought carried the same specifications and "would be guaranteed equally as if it was bonded". He asserted that the Johns-Manville specifications were followed in the installation. He said the nails had no washers but that washers were not required in a sealed roof such as this was. Mr. Potts personally went to the Dick home on different occasions, saw the leaks, inspected the roof and "had the men" make repairs. He observed breaks or leaks "around the edges of the roof, plumbing vent pipes and the television antenna wires". He said the roof had settled in the center, resulting in a pull on the roof edges which caused leakage. Pieces of the composition roof were produced and described as live and in good condition.

The typewritten specifications with a diagram of this particular installation (Exhibit 9) was received in evidence. It provided for "nailing through tin caps at 9 inch centers adjacent to the back edge". The diagram likewise called for "nails driven through flat tin caps".

The case as submitted under plaintiffs' instructions required a finding of express warranty and leaking due to defective workmanship in application. On behalf of defendant the jury was instructed that if the leaks were occasioned by faulty house construction or any cause not attributable to defendant, then plaintiffs could not recover.

■ Defendant filed a motion for directed verdict at the close of plaintiffs' evidence. This motion was overruled and defendant then offered evidence in its behalf. Defendant's action in so doing, waived the error, if any there was, in the overruling of defendant's first motion. Daniels v. Smith, Mo., 323 S.W.2d 705, 706.

We, therefore, are left with one assignment of error on this appeal and it is this: Did the court err in overruling defendant's motion for directed verdict submitted at the close of all the evidence? In order to determine this question we must review the evidence which was favorable to plaintiffs. This evidence must be considered in the light most favorable to plaintiffs, who must be given the benefit of all favorable inferences arising therefrom and we shall disregard defendant's evidence unless it tends to aid the plaintiffs' case. Mincielli v. Sloan's Moving and Storage Co., Mo., 303 S.W.2d 17–19, Daniels v. Smith, supra.

In so reviewing the evidence we find that certain essentials of plaintiffs' case have been clearly proved and are not in fact substantially disputed: (1) The express written warranty for 15 years against defective materials or workmanship was proved. (2) Within two weeks after installation the roof leaked in one place and within two years leaked many times and in numerous places. (3) By reason of the leaks, plaintiffs suffered damage to their ceilings, walls, floors and personal effects. (4) The composition roof pulled loose at the edges and leaked around the vent flashings.

Although defendant claimed that proper materials were used and good workmanship procedures were followed in the installation, no caps were used in the nailing although the specifications and installation diagram provided for nail caps. Defendant further suggested that faulty frame construction, inadequate flashing around openings, television antenna erection and walking on the roof resulted in a two inch sag, thereby causing the difficulties.

In Benson v. Denny, Mo.App., 14 S.W.2d 456, 457, defendant's counterclaim was based upon warranty of an automobile. The court said:

"Defendant's evidence tended to show that the oiling system of the automobile failed to properly function, by reason of which two sets of pistons were burned out, and that this occurred within about 2 months after she purchased the automobile; that she took the automobile to the plaintiff and complained that the oiling system was not functioning properly and left the automobile with him to be repaired, but that he failed to correct the trouble; that the top went to pieces, without any apparent cause, within a few months after she purchased it. We think the evidence was sufficient to show, or to warrant a fair inference, of defective workmanship".

The question whether the damage was caused by faulty house construction or improper workmanship in the roof installation was submitted to the jury under instructions about which defendant does not complain on appeal. The jury found for plaintiffs and against defendant. We believe the issue here was properly presented to the jury and that the evidence is sufficient to support the verdict. Therefore, it was not error to deny defendant's motion for directed verdict.

Defendant has invited our attention to Whaley v. Milton Const. & Supply Co., Mo.App., 241 S.W.2d 23. There the judgment for plaintiff was reversed because the court refused to give defendants' instruction submitting their claim that the damages were caused by latent defects not reasonably discoverable by defendants. In our case defendant's proffered instruction presenting its defense was given to the jury. Defendant also refers to the following statement taken from 12 Am.Jur. 806: "Where skill as well as care is required in performing the undertaking and where the party purports to have skill in the business and he undertakes for hire, he is bound to exercise due and ordinary skill, or, in other words, to perform in a workmanlike manner * * * He does not become a guarantor of the results of such operation". We do not disagree with that statement. However, our case was neither tried nor sub-

mitted upon the theory that defendant was a *guarantor*.

We believe the trial court properly denied the defendant's motion for directed verdict submitted at the close of all the evidence. On appeal defendant presents no other or additional assignment of error. The judgment below, is therefore, affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, ·C., is adopted as the opinion of the Court.

All concur.