Samuel Robert CROOK, Appellant,

v.

Ralph Wayne DOOLEY by his Guardian Ad Litem, Ralph Marvin Dooley, Respondent.

No. 50783.

Supreme Court of Missouri,

Division No. 1.

May 10, 1965.

Ike Skelton, Jr., W. R. Schelp, Lexington, and Dick B. Dale, Jr., Richmond, Skelton & Bradley, Lexington, of counsel, for appellant.

A. Lamkin James, Marshall, A. V. McCalley, Richmond, James & Butterfield, Marshall, of counsel, for respondent.

HIGGINS, Commissioner.

Action for $63,668.43 damages for personal injuries. Verdict and judgment were for defendant and plaintiff has appealed.

A collision between a tractor driven by plaintiff and an automobile driven by defendant occurred November 1, 1962, on Route A north of Hardin, Missouri, at a point where a 1-lane bridge spans a drainage ditch. Route A, also known as "Ozark Short Line," is a black-top road, 17 feet wide, and is approximately level for six tenths of a mile south of the bridge. Exhibit 2 is an engineer's profile of the road showing .57 per cent decline in the 600 feet immediately south of the bridge, a drop of approximately 6 inches per 100 feet. The bridge is 15 feet 4 inches wide and 29 feet long; the roadway on the bridge is 11 feet wide. Exhibit 10 shows three black and white "candy stripe" reflector boards on each side of the road at each end of the bridge and they are staggered as the road narrows from its general width to the width of the bridge. Exhibit 1 shows a yellow and black "one lane bridge" sign 500 feet south of the bridge. The narrowing of the roadway occurs in the 60 feet immediately south of the bridge. There is a white center line which ends two or three hundred feet south of the bridge. The visible part of the bridge is constructed of five concrete posts interlaced with metal pipe rails on each side of the roadway. A gate 70 yards south of the bridge on the west side of the road leads to a field on plaintiff's farm and a lane from plaintiff's home enters Route A immediately north of the bridge. Defendant was an 18-year-old single man living with his parents on a farm also on Route A.

He worked at Western Auto Store in Lexington and drove back and forth daily between home and work. Both parties were familiar with the scene and with the traffic and vehicles which used the road.

Plaintiff placed the time of collision at 5:35 p. m. He testified also that it had not rained there that day; that sundown was at 5:18 p. m., and that there was enough light to see a quarter of a mile at the time of the collision. Defendant judged the time of collision at 5:45 p. m., and stated that it was dark and a light mist had made the road wet.

Just prior to the collision plaintiff drove his unlighted tractor onto Route A from the field gate and went north toward the bridge. He testified that after he had entered the narrow part of the road and was 40 or 50 feet south of the bridge, he heard a car behind him accelerate, after which he accelerated his tractor. He judged the speed of his tractor at 3 to 4 miles per hour prior to acceleration, and testified that he did not change gears because that would require a stop. He could only go straight ahead due to the ditches on either side of the narrowed roadway. He estimated the speed of the car at 60 or 65 miles per hour, although on deposition he had estimated the speed at 75 to 80 miles per hour. No other vehicles or obstructions were present on the road.

Plaintiff's case also included testimony from defendant's deposition, which was that defendant drove the 1957 Chevrolet that collided with the rear of plaintiff's tractor; that it was dark and misting rain; that he judged the plow at the rear of the tractor to be 450 feet away when he first saw it; that he saw the plow 450 feet ahead with his headlights; that he judged he could see around 500 feet ahead with his lights; that when he first saw the plow he was going 45 to 50 miles per hour, and that the tractor was then starting onto the bridge; that his automobile and brakes were in good mechanical condition and that he had new snow tires on his car.

Pearly Lee Jones, Hardin City Marshall and Ray County Deputy Sheriff, received a call about the accident between 5:30 p. m. and 6:00 p. m. He saw plaintiff's tractor at the center of the bridge headed toward the east railing with the plow in an upright position. He stated it was "dusky" when he arrived.

Trooper John W. Wright of the Missouri State Highway Patrol arrived at 7:30 p. m. It was then dark and wet. He found the tractor near the center of the bridge with the front part in the bridge railing. It was damaged in the front and rear. Defendant's automobile was to the rear of the tractor with damage to its front. He found skid marks running 77 feet to the automobile. He placed the point of impact near the south end of the bridge with the tractor on the bridge at impact. He also stated that there were no shoulders on the road leading to the bridge. Defendant told him that his speed was 45 miles per hour.

Sergeant Frank Wessling of the Kansas City, Missouri, Police Department, was qualified as an expert to testify as to stopping distances. He was asked to assume that plaintiff's tractor was traveling from 3 to 4 miles per hour as it started on the bridge; that the 1957 Chevrolet Sedan had its brakes on in good mechanical condition, equipped with new snow tires, and approaching the tractor at a speed of 45 or 50 miles an hour; that the road had a .57 per cent grade and was an oil base black top wet from mist; that at 450 feet to the rear, the driver of the automobile saw the plow. Upon this assumption it was his opinion that the automobile could be stopped so as not to collide with the tractor within the 450 feet. Upon further questioning he gave as his opinion that the defendant could stop within 184 feet at 45 miles per hour, which distance included 49 feet he would travel during three quarters of a second reaction time; that at 50 miles per hour the total stopping distance would be 222 feet; that at 65 miles per hour the total stopping distance would be 353 feet. He was also asked to compute stopping distance

at 70 miles per hour but defendant's objection to such question was sustained. He stated that if the pavement was dry the stop at 45 miles per hour could be made in 153 feet, and at 50 miles per hour in 183 feet. The witness also stated that all the above stops could be made with safety to the operator and to others and the vehicles. On cross-examination the witness stated that he considered the road as being very slick, "slicker than if it had been raining hard."

Mr. and Mrs. Orville Trego were the first persons to arrive at the accident scene. They stated that it was dark and rainy. Mrs. Trego saw the taillights of defendant's vehicle as they came down the hill to the accident; Mr. Trego said he could see the distance between two light poles, approximately 200 yards.

Defendant testified that he was going between 45 and 50 miles per hour and that he saw the plow when he was "somewhere between a hundred and a hundred and twenty feet away"; that he "automatically grabbed the steering wheel and stomped the brakes." On cross-examination he admitted making previous statements that he was 450 feet back when he first saw the tractor; that such deposition statement was his best judgment at the time after having paced off 500 feet preparatory to submitting to the deposition.

Other witnesses gave testimony on weather conditions and time which has been included in the above recital.

Plaintiff's pleadings contained allegations of primary and humanitarian negligence; however, all allegations of primary negligence were dismissed at the beginning of the trial, and the case was submitted on humanitarian negligence in failing to stop or slacken speed and thus avoid the collision.

■ Defendant insists that plaintiff failed to make a submissible case for failure to establish (1) the distance separating the vehicles and defendant's speed at the time plaintiff came into imminent peril and (2)

defendant's ability thereafter to avoid, and that the errors charged by plaintiff are therefore immaterial. In this situation, we resolve this issue first, and, in making such determination, we review the evidence in the light most favorable to plaintiff. Stradford v. Bluefeather, Mo., 384 S.W.2d 541, 542 [1].

■ Under the humanitarian doctrine no duty to act was imposed upon defendant until a situation of peril arose. Vietmeier v. Voss, Mo., 246 S.W.2d 785, 788 [4]; Farmer v. Taylor, Mo.App., 301 S.W.2d 429, 433 [6]. When plaintiff first became aware of defendant's overtaking vehicle, plaintiff was on the narrowed part of the roadway some 40 or 50 feet south of the bridge and traveling 3 to 4 miles per hour. There were deep ditches on either side of the road and plaintiff could only continue ahead. Defendant first saw the plow attached to the rear of plaintiff's tractor when, by his admission, the tractor was starting onto the bridge. Plaintiff could reasonably be found in imminent peril at any time after he entered the narrowed portion of the roadway in which he could but continue forward, and the point or position of imminent peril was properly for the jury to determine here. Perkins v. Terminal R. Ass'n of St. Louis, 340 Mo. 868, 102 S.W.2d 915, 923 [13].

Part of plaintiff's case was taken from defendant's deposition where he stated that he first saw the plow when he was 450 feet south of it; that the tractor was then starting onto the bridge; that he saw the plow with his headlights 450 feet away, and that he could see around 500 feet with his lights. Defendant, therefore, had notice of plaintiff's peril.

■ Defendant stated his speed to have been between 45 and 50 miles per hour when he first saw the plow. Plaintiff judged that defendant's speed was 65 miles per hour. Witness Wessling testified that under the conditions present at time of collision and at 45 miles per hour, defendant could have

stopped in 184 feet; that at 50 miles per hour he could have stopped in 222 feet, and at 65 miles per hour in 353 feet. These distances are all well within the 450-feet distance at which defendant saw the plow at the rear of plaintiff's tractor. The witness also stated that the stops could be made with safety to the driver and to others, and to vehicles. We conclude that there was evidence on the distance separating the vehicles and defendant's speed and from which a jury reasonably could have found that defendant in the exercise of the highest degree of care could stop and thereby avert the impending injury without injury to himself or others.

■ The evidence shows also that plaintiff's tractor was traveling at a speed of at least 3 or 4 miles per hour in the same direction that defendant's automobile was traveling. Since the jury might reasonably have found under the circumstances that defendant in the exercise of the highest degree of care could have stopped before colliding with plaintiff's tractor, it logically follows that the jury might have found that defendant could have slackened his speed sufficiently to have allowed plaintiff to continue moving forward across the bridge to a place of safety and thus have avoided the collision. Dillon v. Hogue, Mo.App., 381 S.W.2d 599, 605 [3]; Fultz v. Southwestern Bell Telephone Co., Mo.App., 382 S.W.2d 24, 28 [3].

■ Defendant argues that plaintiff cannot disregard his own estimates of speeds in excess of 65 miles per hour and take advantage of defendant's estimate that is contradictory to his own. Fenneren v. Smith, Mo., 316 S.W.2d 602, 605; Meese v. Thompson, 344 Mo. 777, 129 S.W.2d 847; Fisher v. Gunn, Mo., 270 S.W.2d 869. These cases apply where plaintiff relies on a theory which is in fact "at war" with favorable evidence available from defendant which plaintiff seeks to use in his case. They are not in point here because plaintiff's theory is limited to recovery on humanitarian negligence based on defend-

ant's ability to stop or slacken within the distance available. Nor is the lack of proof of defendant's ability to stop in the distance available at speeds of 70, 75, and 80 miles per hour (the speeds indicated in the deposition of plaintiff) fatal as in Elkin v. St. Louis Public Service Co., Mo., 335 Mo. 951, 74 S.W.2d 600, 604. Here, we have evidence from Sergeant Wessling on defendant's ability to stop at plaintiff's estimate of defendant's speed, 65 miles per hour, and at defendant's estimates of 45 to 50 miles per hour. This is the theory of plaintiff's case on trial and he is not bound by his deposition estimates. Plaintiff, however, asked for the opinion of Sergeant Wessling on defendant's ability to stop at 70 miles per hour but the witness was foreclosed from further testimony by defendant's objection and defendant should not now be heard to complain of any failure of evidence which he caused.

■ Defendant contends also that the distances obtained from defendant's deposition and relied upon by plaintiff are but mere guesses and are not of sufficient probative value to justify submission. Prince v. Bennett, Mo., 322 S.W.2d 886, 891 [2]. In that case the court held that a witness could not observe a truck moving only 6 inches in a given direction and formulate a credible opinion that the truck was moving in that direction at 10 miles per hour without resorting to guesswork. Such is not the case here where defendant made his deposition statements of distances of 450 and 500 feet after stepping off 500 feet preparatory to giving his deposition. Nor are defendant's statements mere impressions, as in Masonic Home of Missouri v. Windsor, 338 Mo. 877, 92 S.W.2d 713, 716 [3–5]. Under the circumstances here, we cannot say that the statements used in plaintiff's case lacked probative force.

■ Having seen that a jury reasonably could find that defendant could avert the collision by stopping or slackening speed within the 450 feet of defendant's actual notice, a jury could find also that a failure to stop or slacken under those conditions was negligence and that such negligence caused the casualty. There is no contention here that plaintiff did not receive injuries in the casualty.

We conclude that there was probative evidence here of all the elements of a humanitarian case. Banks v. Morris & Co., Mo., 302 Mo. 254, 257 S.W. 482, 484 [2].

Among other things plaintiff complains of errors in the giving of Instruction No. 8. He charges that it is erroneous because it fails to converse both theories of humanitarian negligence submitted and is therefore in conflict with Instruction No. 1, which included: " * * * in time thereafter by exercising the highest degree of care and with the means at hand, and with safety to Defendant, his automobile and other persons in the vicinity, *to have stopped or slackened the speed of defendant's automobile,* * * * and by so doing, could have prevented and avoided such collision described in evidence, * * * and was thereby negligent, * * *." (Italics added.) Defendant conversed this theory by Instruction No. 8 which included: " * * * in time for the defendant thereafter, by the exercise of the highest degree of care, *to have stopped the same,* so as to have prevented the injury to plaintiff, then plaintiff is not entitled to recover and you will find your verdict in favor of the defendant." (Italics added.)

■ Plaintiff's petition alleged disjunctive theories of liability for failure to stop, slow, or swerve; Instruction No. 1 submitted two of such disjunctive theories, i. e., failure to stop or slacken speed, and it has been demonstrated that there was evidence in support of both theories. In this posture of the case we cannot say, as defendant contends, that plaintiff's theory of recovery was limited to failure to stop. On the contrary, as above indicated, it was twofold. In this situation, the submission of the converse of stopping without also submitting the converse of slackening was misleading and constituted a misdirection.

Carlson v. St. Louis Public Service Co., Mo., 358 S.W.2d 795, is directly in point. There, plaintiff was making a left-hand turn and her automobile was struck in the right rear by defendant's bus. Plaintiff submitted her case on primary negligence in failing to keep a lookout, and on humanitarian negligence in failing *to stop or slacken speed* and thus avoid the collision. The defense was submitted in an instruction which relieved defendant of liability if the bus operator was unable to avoid collision by stopping. No mention was made of the submitted duty of slackening speed. In holding the giving of the instruction prejudicial error, the court said, 358 S.W.2d 1. c. 801 [10]: " * * * It makes little difference what we call it; it did attempt to hypothesize defendant's theory and directed a verdict. It must have been complete, both in the essentials of its hypothesization and in a recognition of defendant's duties. * * * In addition, and of much importance, it relieves defendant of all liability if the operator was unable to avoid the collision by stopping, completely ignoring the submitted duty of *slackening* sufficiently to avoid the collision; in this later respect if defendant intends to say, as apparently it does, that slackening was included in the cover-all phrase 'and was not negligent under any of the other instructions,' most certainly the submission of stopping and *not* of slackening was misleading, and the general reference to other instructions and to the exercise, generally, of the highest degree of care was not sufficient either to correct that false impression * * * or the failure to hypothesize facts to sustain a finding of no humanitarian negligence." See also Willard v. Bethurem, Mo.App., 234 S.W.2d 18, 21 [1]; Scott v. Nash, Mo. App., 355 S.W.2d 626, 632 [6–8].

Instruction No. 8 is erroneous in this same respect because it omits and ignores plaintiff's theory of recovery based on failure to slacken speed and is thus in conflict with Instruction No. 1. For this reason, plaintiff is entitled to a new trial.

Defendant argues that plaintiff was not entitled to a submission on failure to slacken speed because the theory is not available where plaintiff is stopped or following a fixed course and only the defendant has control of the situation, citing Moss v. Nehman, Mo., 247 S.W.2d 305; Harrow v. Kansas City Public Service Co., Mo., 233 S.W.2d 644; State ex rel. Baldwin v. Shain, Mo., 125 S.W.2d 41; Steuernagel v. St. Louis Public Service Co., 357 Mo. 904, 211 S.W.2d 696; and Cosentino v. Heffelfinger, 360 Mo. 535, 229 S.W.2d 546. This argument is untenable here because plaintiff was not stopped. Plaintiff testified that when he became aware of defendant's oncoming car he was going 3 to 4 miles per hour and then "accelerated" to get away; he did not change gears because that would have required him to stop and lose time. Thus, he was not oblivious as was the plaintiff in Harrow v. Kansas City Public Service Co., supra, and State v. Shain, supra, nor was he stopped with a fixed intent to remain stopped as in Moss v. Nehman, supra. Steuernagel v. St. Louis Public Service Company, supra, and Cosentino v. Heffelfinger, supra, are distinguished in that they are cases in which a point of imminent peril could not be fixed without resorting to speculation.

Defendant also criticizes Instruction No. 1 but its accuracy is not an issue on this appeal, and it is unnecessary to comment further on any of the instructions because retrial will be under Missouri Approved Jury Instructions. Likewise, we find it unnecessary to review other points on this appeal which are not likely to arise on retrial.

The judgment is reversed and the cause remanded for a new trial.

Houser and Welborn, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.